ARNOLD E. INMAN *vs.* IRA MARCUS.

JULY 19, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

Moss, J.   This is an action of trespass on the case brought in the superior court to recover damages which the plaintiff alleges that he sustained by reason of certain false representations by the defendant to him.   The jury returned a verdict for the plaintiff for $2025.   After a hearing upon the defendant's motion for a new trial the trial justice granted the motion and ordered a new trial, unless the plaintiff would, within five days, file a remittitur of all the verdict in excess of $1500, but otherwise denied the motion.   The plaintiff filed the remittitur.   The defendant then filed an exception to the denial of his motion in that form.   The case is now before us on that exception, on one to the denial of a motion by him for the direction of a verdict in his favor, on one to certain parts of the charge to the jury, and on three exceptions by him to certain rulings by the trial justice as to the admission of evidence.

The defendant was attorney for the plaintiff and his mother in a contest by them of the validity of the will of Edna F. Inman, the plaintiff's paternal grandmother, they having taken an appeal from a decree of the probate court admitting it to probate.   The compensation which the defendant was to receive for his services in the matter is the subject of conflicting evidence.   He testified that he agreed with the plaintiff that in any event the charge would be "no greater than a sum equal to one-third of the recovery."   The plaintiff, admitting that he agreed to pay the defendant for his services, denied that he agreed to pay him a sum equal to one-third of the amount recovered.

At a conference on March 21, 1938 between the defendant and Fergus McOsker, the trial attorney employed by him, on one side, and on the other side the two attorneys who represented both the Industrial Trust Company, of the city of Providence, as executor of the will, and Viola Inman, as executrix of the will and individually, a compromise agreement was arrived at.   One of the latter attorneys, Edward F. Lovejoy, had died before the trial of the instant case.   Wilford S. Budlong, the survivor of them, testified at the trial

of this case that at this conference they stated to the defendant and his trial attorney what Viola Inman was willing to do, if the appeal was abandoned by the appellants, including that she would pay $2500 as fees for the appellants' counsel, "providing that was the only charges which would be made against Arnold Inman in this case". This witness also testified that the defendant agreed to that sum and to confine himself to it, and that his trial attorney did not object.

The defendant did not, in his testimony, contradict in any particular the testimony above stated, but relied on the fact that in the typewritten agreement of settlement, which was drawn at the close of the conference and was later in that day signed by the plaintiff, his mother and Viola Inman, the only provision as to the fees of the contestants' counsel was paragraph 2, as follows: "That Viola L. Inman shall pay to Ira Marcus and Fergus McOsker, counsel for the contestants in said cause, the sum of Twenty-five Hundred Dollars ($2500)." The plaintiff testified that until after the defendant obtained from him the $1500 which is involved in this case he had no information that the defendant had agreed that the $2500 would cover all counsel fees owed by the plaintiff for services to him in the case.

On the day of the signing of the compromise agreement for the settlement of the will contest, or on the next day, the sum of $2500 was paid by Viola Inman to the defendant and the other provisions of that agreement were duly performed by her, which included the deposit by her of the sum of $10,000 with the Industrial Trust Company in trust for the plaintiff.

Plaintiff testified that on the next day after the signing of the compromise agreement he went to the defendant's office and asked the latter to go with him to the trust company and find out if it would advance to him $500 out of the money bequeathed to him by the will; and that the defendant said that he thought that could be arranged and went with him to the bank. He also testified that the defendant told him to wait in the lobby, while the former went to the trust

department to get the money, if possible; that he expected the defendant back with a check for $500, but instead "he showed up with one for $2,000." The plaintiff's testimony continued as follows: "And I said, 'I don't want $2,000.' I said 'I only want $500'; and he said, 'Well, of course, that $2,500 check that Mr. McOsker and I received is not the full fee.' He said, 'There is $2,500 more due,' he said, 'and I am taking this other $1,500 as part of that fee to pay off Mr. McOsker.' And out of that $2,000 check I got $500 and he took the other $1,500." There was no evidence that McOsker ever received any part of the money paid to the defendant on that day.

The plaintiff testified further that the defendant did not give him a receipt for the $1500; and that several months later he notified the trust company that the defendant was no longer his attorney. He admitted, on cross-examination, that he had signed the typewritten compromise agreement; that it was satisfactory to him and that he then believed that it covered the entire situation, including full compensation to his attorneys.

The defendant testified that the written agreement of settlement was drafted as the result of negotiations mainly between Lovejoy and himself; that the terms thereof were agreeable to the plaintiff; and that it was executed in his presence by the plaintiff and the latter's mother, after they had discussed it. He also testified that they discussed with him the matter of additional fees and expenses above the amount paid by Viola Inman, who, he testified, was only to contribute toward the charges the amount stated in the typewritten agreement; and that it had been agreed that there should be no charges against the plaintiff's mother, whom he also represented. He testified further that the plaintiff agreed with him to pay him on the next day an additional $1000 for his services; that on that next day they went to the Industrial Trust Company and the plaintiff got the money and paid him $1000 from it, keeping the rest; and that he knew

of no dissatisfaction by the plaintiff until the writ in the present case was served.

As above stated, he did not deny the testimony by the surviving attorney of the two who represented Viola Inman at the time of the negotiation of the compromise agreement of settlement, that they told the defendant that she would pay $2500 in fees to the appellants' counsel, provided that this sum would cover all charges against the plaintiff; and that he, the defendant, had agreed. He contended, however, that such testimony was immaterial in the case, because of the fact that such a proviso was not incorporated in the type-written agreement and was inconsistent with certain parts of that agreement.

Much of the testimony of the two parties, as to what happened when, on the next day after the settlement agreement was made, $2000 was obtained from the Industrial Trust Company on the plaintiff's check for that amount and he let the defendant have at least half of it, is irreconcilable. The trial justice, in his decision, recognized this fact and stated as follows: "The testimony was in conflict on vital issues of the case but the jury could have found from the evidence . . . that Mr. Marcus agreed with Mr. Lovejoy that $2500.00 would constitute his entire fee in the will case and that Mr. Marcus failed to inform his principal of the agreement that he had made. The jury having made its finding on this phase of the case, the Court cannot say that such finding is against the weight of the evidence or against the law as given by the Court." The trial justice also stated, in substance, that the jury could properly find, from the evidence, that on the next day after the settlement agreement was signed the defendant, without having informed the plaintiff of the former's agreement to limit his charge for counsel fees to the $2500 received by him from Viola Inman, was not entitled to receive $1500 more from the plaintiff.

Defendant's first, second and third exceptions, which relate to the admission in evidence of Budlong's testimony to the effect that the defendant agreed to accept the sum of

$2500 in full payment of all charges for professional services in the case, are without merit. There is no question here of varying a written instrument by parol evidence. The defendant was merely a witness and not a party to such instrument. In this situation the evidence was admissible for consideration by the jury as to its materiality on the issues in the case. These exceptions are overruled.

The question under the defendant's fourth exception is whether he was entitled to a directed verdict in his favor. In support of that exception one of the defendant's principal arguments is based on the fact that there was nothing in the written agreement of compromise showing that such agreement was made upon the condition that the total fees of the plaintiff's counsel would not exceed $2500.

He points out, in his brief, in substance and effect, that in that agreement it is provided in paragraph 2 that Viola Inman shall pay to the counsel for the contestants $2500, but there is no provision that this shall be in full payment for all their services in the case to the contestants. In contrast therewith he points out that in that agreement it is stated that the contestants shall not object to the counsel fee of the attorneys for the Industrial Trust Company as executor, provided that such fee did not exceed $950 for services to the estate up to and including the filing of the final account of such executor; and further that all the parties to it agree that the fee to be charged by the Industrial Trust Company as executor should not exceed $1400, which should be for all services by it as such up to and including the final account.

This argument is not without force and may have been the origin of defendant's belief that his agreement with the plaintiff for compensation of not more than one-third of the sum recovered was not affected by the written agreement of compromise or the negotiations that occurred previously thereto. But the defendant overlooks the fact that the plaintiff's testimony on the point of defendant's compensation for services denies that there was any such understanding. In

view of this conflict, among others, in the evidence, defendant's motion for a directed verdict was properly denied. Defendant's fourth exception is therefore overruled.

The defendant's fifth exception is to certain parts of the charge to the jury and is based upon the contention that, even if such an agreement as was testified to by Budlong had been made by the defendant, the obtaining by him from the plaintiff of further money for counsel fees after receiving the $2500 from Viola Inman could be merely a breach of a promise and nothing in the nature of any fraud that the plaintiff could claim as a misrepresentation.

This contention is untenable as the jury may well, on the conflicting evidence, have found that the limitation of the fees of the contestants' counsel in the will contest to $2500 was an express condition upon which the compromise of that contest was made to depend; and that it was the duty of the defendant to disclose to the plaintiff that limitation before obtaining from him more money for services performed by the defendant. His obtaining of more money without such disclosure might well have been found by the jury to be obtaining it by the equivalent of a misrepresentation. Therefore the defendant's fifth exception is overruled.

The defendant's sixth exception is to the denial by the trial justice of the defendant's motion for a new trial. This motion was based on the grounds that the verdict thereunder was against the law, was against the evidence and the weight thereof and failed to do substantial justice between the parties. We agree with the defendant that ordinarily the opposing party is not in a position to fix the compensation of an attorney representing adverse interests. But in the instant case the conflicting and irreconcilable evidence presented an extraordinary problem which it was plainly within the province of the jury to solve. Assuming that the defendant believed that he was acting properly in this entire matter, yet the jury's verdict shows that they found otherwise. Their verdict was approved by the trial justice, and even though the evidence might also have permitted them to return a

verdict for the defendant, we are unable, under these circumstances, to say that he was clearly wrong in denying defendant's motion for a new trial. This exception is therefore overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment for the plaintiff in the amount of the verdict, as reduced by the remittitur filed by him.

*Fergus J. McOsker,* for plaintiff.

*Ira Marcus, pro se ipso.*