**MARR SCAFFOLDING CO., INC.**

v.

**FAIRGROUND FORMS, INC., et al.**

No. 94–438–M.P.

Supreme Court of Rhode Island.

Aug. 30, 1996.

Peter Olson, for Plaintiff.

Merlyn P. O'Keefe, Peace Dale, for Defendant.

## OPINION

FLANDERS, Justice.

Soothsaying ten years ago about what this court would do when squarely faced with the question now presented by this case, Federal District (now Circuit) Judge Bruce M. Selya predicted that we would adopt the so-called intent rule in deciding whether a general release purporting on its face to run in favor of "all other persons, firms or corporations" (hereinafter referred to as "omnibus language") is effective to release an unnamed third party against whom the releasor still seeks to prosecute claims. *McInnis v. Harley–Davidson Motor Co.*, 625 F.Supp. 943, 958 (D.R.I.1986). We now fulfill Judge Selya's prophecy by ruling that such a release will not bar claims against an unnamed third party who invokes its omnibus language when the participants in the original settlement did not, as a factual matter, intend to release this party from liability.

### Facts

The plaintiff, Marr Scaffolding (Marr), was in the business of renting construction materials and equipment, including aluminum foundation forms, to construction contractors and builders. In August 1990, Marr rented some aluminum forms to defendant Cement Heads, Inc. (Cement Heads) for its use in pouring a foundation at a job site in Providence, Rhode Island. Unfortunately, some of this construction gear "disappeared" from the Providence site. With Marr's approval, Cement Heads then transferred the remaining leased materiel to another construction site in Westerly, Rhode Island, where defendant Fairground Forms, Inc. (Fairground)

was working as a subcontractor on a public-works project. Professional Building Concepts, Inc. (Professional Building) was the general contractor on this Westerly project, which was bonded by Commercial Union Insurance Company (Commercial Union) and Hartford Insurance Company (Hartford Insurance). Cement Heads and Fairgrounds (which also rented other equipment from Marr for use at the Westerly site) swapped or borrowed Marr's leased materiel on several occasions without Marr's knowledge, and much of this equipment also "disappeared".

In due course, Marr sued Cement Heads, Fairground, Professional Building, and Commercial Union. Because the bonding companies were only liable for that portion of Marr's claims relating to its equipment rentals to Fairground at the Westerly site, Marr decided to settle this aspect of its lawsuit. Accordingly, its corporate attorney entered into negotiations with the attorney for Professional Building and the bonding entities. As a result, these settling parties caused $5,000 to be paid to Marr in exchange for Marr's signing a release (a complete copy of which is attached hereto as an appendix), which stated in pertinent part:

> "Marr * * * (hereinafter referred to as 'Releasors') for and in consideration of Five Thousand ($5000.00) Dollar [*sic*] * * * has remised, released and forever discharged and do for itself and its successors and assigns hereby remise, release and forever discharge *Professional Building* * * * and *Commercial Union* * * * and * * * *Hartford Insurance* * * * and their officers, employees, agents and attorneys, *and any and all other persons, firms and corporations* * * * (*hereinafter referred to as 'Releasee'*), of and from any and all debts, demands, actions, causes of action, * * * controversies, * * * claims, rights, liabilities, suits * * * now existing, or which may result from the existing state of things, which Releasors now have or ever had against the Releasee from the beginning of the world to the day of the date of these presents * * *." (Emphases added.)

The release also provided:

> "In particular and without limitation of the foregoing Releasee is specifically released

from any and all claims for fair market value and fair rental of scaffolding, or any other claim made in the civil action entitled *Marr Scaffolding Co., Inc. v. Fairground Forms, Inc., et al,* * * * C.A. No. 91–4449, or any claims that Marr * * * may have now or in the future of any nature whatsoever."

Cement Heads eventually moved for partial summary judgment, asserting that as a matter of law the omnibus language in the release discharged its liability to Marr. Marr opposed the motion, arguing that the document applied only to the named releasees (Professional Building, Commercial Union, and Hartford Insurance) and thus did not inure to Cement Heads's benefit. To support its theory, Marr submitted affidavits from the attorneys for Marr and the contractor/bonding entities who negotiated and drafted this release, stating that they neither bargained for nor intended to discharge any liability that Cement Heads may have to Marr. Because the motion justice determined that the release was unambiguous, he refused to allow the settling parties' purported subjective intentions about the scope of the release to vary the stated terms of the instrument. Accordingly, he granted Cement Heads's summary-judgment motion and entered a judgment against Marr. Marr sought redress here via a petition for a writ of certiorari. We granted the writ and proceed to dispose of the issue presented.

### Standard of Review

We review a Superior Court justice's decision to grant a summary-judgment motion on a de novo basis, applying the same criteria as the court below. *See* 6 James W. Moore, *Moore's Federal Practice* § 56.27(1), at 56–852 (2d ed. 1993); *see also St. Hilaire v. City of Laconia,* 71 F.3d 20, 24 (1st Cir. 1995) (construing Fed.R.Civ.P. 56, which is "the same as" the Rhode Island rule, *see* Super. R. Civ. P. 56, Reporter's Notes), *cert. denied,* —— U.S. ——, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996). As we have delineated what these criteria are in many cases, *e.g., DiQuinzio v. Panciera Lease Co.,* 641 A.2d 50, 53–54 (R.I.1994), we emphasize here only the most salient of them, namely, that summary judgment is appropriate when the rec-ord, viewed in the light most favorable to the party opposing the motion, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* at 54.

### Analysis

In *Pardey v. Boulevard Billiard Club,* 518 A.2d 1349, 1355 (R.I.1986), we stated that "[t]he element of stability necessary to support the settlement of controversies requires that we give significant deference to the terms of a general release until we have been furnished with an adequate reason to do otherwise." "This adequate reason," we said,

"must be based upon factual evidence concerning the *intention of the parties (and for this purpose a relaxation of the parol-evidence rule may well be required )*, as well as the nature of the consideration paid, and the existence of material mistake, fraud, misrepresentation, or overreaching." (Emphasis added.) *Id.*

One purpose for our willingness to look behind the omnibus language in a release and ascertain the parties' true intentions—if an "adequate reason" exists to do so—is to prevent third-party defendants from taking "gratuitous advantage," *see McInnis,* 625 F.Supp. at 952, of releases in which they took no part:

" '[B]y [their] superficial appraisement of certain words in the agreement, by a failure to look beneath the moth-eaten phrases of that stereotyped form so as to ascertain the true intention of the parties, by a determination to take the advantage of the syllable and not the spirit, by letter and not by law, [they would be] * * * coming into a windfall * * *.' " *Lennon v. MacGregor,* 423 A.2d 820, 821 n. 1 (R.I. 1980) (quoting *Hasselrode v. Gnagey,* 404 Pa. 549, 556, 172 A.2d 764, 767 (1961) (Musmanno, J., dissenting)).

Because the motion justice in *Pardey* never addressed this intention-of-the-parties issue, we remanded the case back to the Superior Court so a hearing could be held to determine whether the parties to a settlement involving a release like this one—one that contained boilerplate phrases purporting

to release the entire world from any and all claims—was actually intended by those parties to discharge an unnamed third person from liability for the specific claims at issue. *See Pardey*, 518 A.2d at 1355. After conducting the hearing, the Superior Court ruled that the settling parties did not intend to release a particular unnamed third party "by signing what was purported to be a general release but which specifically released other parties." *Pereira v. Tellier*, 583 A.2d 523, 524 (R.I.1990) (although document contained boilerplate wording purporting to discharge named releasees and "any and all other persons, firms and corporations," the plaintiff's claim against an unnamed third party was not barred when there was no intent to release this particular third party). As in the instant case, there was no indication in *Pereira* that any party to the release or settlement intended that the instrument's omnibus language would extend to the particular unnamed third party who later sought to take "gratuitous advantage" of the release.

Here, the release identifies by name Professional Building, Commercial Union, and Hartford Insurance—but *not* Cement Heads—as releasees. The affidavits submitted to the Superior Court in opposition to Cement Heads's summary-judgment motion show that the parties to the settlement that produced this release never intended that the omnibus language would release Cement Heads's potential liability to Marr on Marr's other claims. Thus, we are not faced here with the more difficult question presented when the parties to the original settlement do not all agree (as they do here) that the scope of the omnibus-release language at issue was not intended to reach any possible claims that the settling plaintiff may have against a particular unnamed third-party defendant. Although we reserve judgment on this question, we may be more inclined to give "significant deference to the [broad] terms of a general release," *Pardey*, 518 A.2d at 1355, and consequently to hold the releasor to the omnibus language purporting to release unnamed third parties, in a situation in which the signatories to the original settlement do not challenge the application of such a release to an unnamed third party. *See Nedder v. Rhode Island Hospital Trust*

*National Bank*, 459 A.2d 960, 962 (R.I.1983) (a general release barred an action against a third party who was described, though not specifically named, in the release when the settling parties' intentions concerning who was released were not factually challenged). We might also be more willing to defer to the omnibus language in a general release when, in contrast to the situation here, one of the participants in the settlement who paid consideration for the release claims that inclusion of this omnibus language was intentional, was part of what this participant bargained for to stave off unwanted future claims for contribution or indemnification from unnamed third parties, or was included in the release because it was otherwise of specific benefit to one of the settling parties.

■ In any event, given our statements in *Pardey* and our holding in *Pereira*, the motion justice should have relaxed the parol-evidence rule, examined the affidavits submitted, and if necessary conducted an evidentiary hearing to assess and determine the true intentions of the parties to the original settlement who negotiated and prepared this release. *See Pardey*, 518 A.2d at 1355 (remanding the case and directing that "a hearing be held including the taking of evidence, if necessary, and that findings of fact and conclusions of law be made" regarding the intended scope of a release containing omnibus language).

Cement Heads contends that, if there is one principle of contract law that is carved in stone, it is that parties to an integrated and unambiguous written agreement like this release are not allowed to vary or contradict the terms of that instrument by introducing evidence extrinsic to the document. In other words, the parties to the settlement should not be allowed to show that they did not really mean what the release on its face says they meant. Although this argument has a certain "sidewalk appeal," there are several reasons why it cracks under the stress of closer scrutiny.

■ *First.* The rule that bars the introduction of facts *dehors* the contract when its language is clear and complete on its face does not prevent a court from considering

such extrinsic evidence if, by reason of a mutual mistake common to both sides of the contract, the written document "fails in some material respect correctly to reflect their prior completed understanding." *Hopkins v. Equitable Life Assurance Society of the United States,* 107 R.I. 679, 685, 270 A.2d 915, 918 (1970); *accord* 2 E. Allan Farnsworth, *Contracts* § 7.5 (1990). In such instances, extrinsic or parol evidence should be admitted for the purpose of reforming the contract to mirror the true intent of the parties. *E.g.,* Farnsworth, § 7.5 at 219.

Here, the intent-evidence set forth in the settling attorneys' affidavits points unerringly in the direction favored by Marr—namely, that, notwithstanding the all-embracing sweep of the omnibus language used in the instrument to designate what entities were being released (as reflected in the broad definition of "Releasee"), the parties to the settlement never actually intended to discharge Cement Heads's liability, and their inclusion of such omnibus language in the release resulted from a mutual mistake in draftsmanship rather than their deliberate use of such boilerplate.

■ *Second.* As a stranger to this release, to the settlement negotiations that shaped it, and to the consideration that produced it, Cement Heads is butting up against a concrete wall by attempting to prevent the parties thereto from introducing parol evidence of their intent to assist in the interpretation of this instrument. "Rhode Island courts have adopted a consistently unsympathetic position toward parties who seek to take gratuitous advantage of agreements in which they took no part." *McInnis,* 625 F.Supp. at 952. Thus, we held some years

ago that a stranger to a contract could not prevent the admission of parol evidence to aid in its interpretation. *Inman v. Marcus,* 71 R.I. 232, 237, 43 A.2d 320, 322 (1945).

*Third.* Contrary to Cement Heads's position, this release *is* ambiguous in several respects:

A. The omnibus language used to define who the Releasee is may simply refer back, as Marr argues, to the named releasees identified earlier in the same sentence, rather than signify a vast embrace of all the peoples of the world and their many types of business organizations. So construed, it would apply only to those "other" entities that are related to or affiliated with the identified releasees.

B. The release contains a clause that states that the $5,000 settlement payment "is not to be construed as an admission of liability on the part of the Releasee, *by whom liability is expressly denied.*" (Emphasis added.) As in *Sellon v. General Motors Corp.,* 521 F.Supp. 978, 983–84 (D.Del.1981), this purported denial of liability on behalf of humankind and all its multifarious business organizations throughout the world creates an ambiguity in regard to exactly who is being released because if the Releasee who is denying liability refers not only to the named releasees but to truly "all other persons, firms or corporations," then "the document, rather grandiloquently, purports to speak for the world." We would not lightly attribute such ventriloquial hubris even to the most polymathic of legal scribes, let alone to the erring artisans who crafted this particular release.[1]

---

1. In doubting whether Marr and the other parties to this settlement actually intended that the omnibus language in the release would have so sweeping an application that the entire legal world would expressly be given a speaking role in denying that there was any admission of liability associated with the $5,000 settlement payment, our reaction is not unlike the skepticism expressed by Chico Marx when he encountered another type of contractual clause during the Marx Brothers' famous film *"A Night at the Opera"* (Metro–Goldwyn–Mayer 1935):

> *"Fiorello* [played by Chico Marx]: Hey, wait—wait! What does this say here? This thing here?

> *"Otis B. Driftwood* [played by Groucho Marx]: Oh, that? Oh, that's the usual clause. That's in every contract. That just says, uh, it says, uh, if any of the parties participating in this contract is shown not to be in their right mind, the entire agreement is automatically nullified.
> *"Fiorello:* Well, I don't know.
> *"Driftwood:* It's all right. That's—that's in every contract. That's—that's what they call a sanity clause.
> *"Fiorello:* You can't fool me. There ain't no Sanity Claus."

**C.** The fact that the release was executed in exchange for funds tendered solely by one or more of the identified parties suggests that Marr did not intend to release unnamed third parties who provided no consideration for the release and who were not in privity with, related to, or affiliates of the paying releasees. *See McInnis,* 625 F.Supp. at 957 n. 8. Indeed, the relatively small amount of the settlement compared to the amount of Marr's other remaining claims itself creates some uncertainty. *Id.*

**D.** Finally, and perhaps most egregiously, if the Releasee includes not only the named entities but also every other person and legal entity throughout the world, then Marr would have released not only all its existing claims against everyone, but also "any claims that Marr * * * may have now or *in the future* of any nature whatsoever." (Emphasis added.) If this purported release by Marr of all existing and future claims "of any nature whatsoever" against one and all was taken literally and enforceable against Marr by all its existing and potential customers, then Marr's accounts receivable and, in all likelihood, its remaining business life would evanesce faster than its foundation forms "disappeared" from construction sites. Business suicides, like other species of self-destruction, are not a favored stepchild of the law. *Cf. Laurie v. Senecal,* 666 A.2d 806, 808 (R.I.1995) ("the state has an interest in preserving life and preventing suicide").

### Conclusion

For these reasons, we grant Marr's petition for certiorari, quash the motion justice's order granting summary judgment in favor of Cement Heads, and remand the papers in this case to the Superior Court with our decision endorsed thereon for a hearing on whether the parties to the settlement intended to release Cement Heads from liability.

### APPENDIX

#### GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS:

That Marr Scaffolding Co., Inc., South Boston, Massachusetts (hereinafter referred to as "Releasors"), for and in consideration of Five Thousand ($5,000.00) Dollar and other valuable considerations to it paid, the receipt whereof is hereby acknowledged, has remised, released and forever discharged and do for itself and its successors and assigns hereby remise, release and forever discharge Professional Building Concepts, Inc. and Commercial Union Insurance Company and the Hartford Insurance Company and their officers, employees, agents and attorneys, and any and all other persons, firms and corporations, their heirs, executors, administrators, successors and assigns (hereinafter referred to as "Releasee"), of and from any and all debts, demands, actions, causes of action, specialties, covenants, contracts, controversies, agreements, promises, doings, omissions, variances, damages, executions, claims, rights, liabilities, suits, sums and sums of money, accounts, reckonings, presentments, attorneys' liens, rights to attorneys' fees and extents whatsoever, both at law and in equity, now existing, or which may result from the existing state of things, which Releasors now have or ever had against the Releasee from the beginning of the world to the day of the date of these presents; including, without limiting the generality of the foregoing, claims for any injuries, damages, or conditions sustained by Releasor which are unknown at the present time.

In particular and without limitation of the foregoing Releasee is specifically released from any and all claims for fair market value and fair rental of scaffolding, or any other claim made in the civil action entitled Marr Scaffolding Co, Inc. vs. Fairground Forms, Inc., et al, Providence County Superior Court, C.A. No. 91–4449, or any claims that Marr Scaffolding may have now or in the future of any nature whatsoever.

It is further understood and agreed by said Releasors that this settlement is a compromise of doubtful and disputed claims and that this payment is not to be construed as an admission of liability on the part of the Releasee, by whom liability is expressly denied.

The decision of Releasors to make this General Release has not been induced in any way, directly or indirectly, by any represen-

tative or person acting or purporting to act on behalf of Releasee. Releasors hereby acknowledges and assumes all risk, chance or hazard that the injuries or damages complained of, if any, may be or become greater or more extensive that is now known, anticipated or expected. No promissory inducement which is not herein expressed has been made to Releasors, and in executing this General Release, Releasors does not rely upon any statement or representation made by any person, firm or corporation, hereby released, or any agent, physician, doctor or any other person representing them or any of them concerning the nature, extent or duration of said damage or losses, if any, or the legal liability therefor.

This General Release contains the entire agreement between the parties hereto and the terms of this General Release are contractual and not a mere recital.

IN WITNESS WHEREOF, Marr Scaffolding Co., Inc., having read the foregoing General Release carefully, and knowing and understanding its contents, signs the same as its own free act and deed the 8th day of July, 1993.

*CAUTION: READ BEFORE SIGNING*

SIGNED UNDER PENALTY OF PERJURY

WITNESS:

/s/ [Signature]

/s/ [Signature]

Marr Scaffolding Co., Inc.

By its Authorized Agent: