Glenn McCRORY and Ann McCrory,
d.b.a. Frenchtown Auto Sales

v.

Robert SPIGEL.

No. 98–126–Appeal.

Supreme Court of Rhode Island.

Nov. 23, 1999.

James A. Currier, Providence, for Plaintiffs.

Edward R. McCormick, III, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court on November 1, 1999, pursuant to an order that directed the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The defendant, Robert Spigel (Spigel), appeals from a Superior Court grant of summary judgment in favor of the plaintiffs, Glenn and Ann McCrory (the McCrorys), in the amount of $20,200, plus interest and costs. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown. Therefore, we shall decide the issues raised by the parties at this time.

The McCrorys are the owners of Frenchtown Auto Sales (Frenchtown) in North Kingstown, Rhode Island, a business that sells and services automobiles. Through this corporation, the McCrorys hold a license, issued by the State of Rhode Island, to sell automobiles. The relationship between Spigel and the McCrorys began in 1993, and consisted of an oral agreement whereby the McCrorys rented space in the service department at Frenchtown to Spigel for him to service automobiles individually, and eventually under the corporate name of A Smiling Mr. Bob Enterprises, Inc. (Smiling Mr. Bob). Under the agreement, Spigel also had the authority to sell vehicles for Frenchtown on the Frenchtown lot and at auctions, and would receive a commission for selling cars owned by Frenchtown. When Spigel sold cars that were not owned by Frenchtown, Frenchtown received nothing. Neither Spigel nor Smiling Mr. Bob possessed a license to sell automobiles in the State of Rhode Island.

Spigel testified at deposition that in July 1996, he received a phone call from his nephew, Jeffrey Spigel (Jeffrey), who resides in New York, who offered to sell Spigel some used vehicles. Spigel stated in his deposition that he "ran" the vehicle identification numbers with "the police department" to ensure that the vehicles were clean (i.e., not stolen), and "[t]hat everything checked out." Spigel stated that once he determined that he would be able to make a profit by purchasing the vehicles from Jeffrey and selling them to "wholesalers," he phoned Jeffrey to let him know that he was interested in purchasing the vehicles. After Jeffrey arrived in Rhode Island with three vehicles, Spigel sold two of them to Apollo Auto Sales (Apollo) in Cumberland, Rhode Island, and the third vehicle, a Toyota 4-Runner, to Tarbox South County Toyota (Tarbox) in North Kingstown, Rhode Island. Spigel received $18,000 from Tarbox for the 4-Runner, and in turn paid $14,000 to Jeffrey.

Spigel further testified that shortly thereafter, he received a phone call from an Apollo employee, who notified him that the cars he sold to Apollo had been stolen. Spigel then took the cars back from Apollo and returned the amount Apollo had paid for the two vehicles, which he stated was "probably" $40,000 or $45,000. He testified that he immediately phoned Tarbox and told an employee there not to sell the

4-Runner because there was a problem, and that he then notified the State Police, who retrieved the 4-Runner from Tarbox. Spigel failed to repay any money to Tarbox.

The McCrorys eventually were notified by the Rhode Island Motor Vehicle Dealers Commission, which advised them that a stolen vehicle had been sold using their license number. The commission issued an order for the McCrorys to reimburse Tarbox. On June 23, 1997, the McCrorys filed a complaint against Spigel to collect the money owed to Tarbox, asserting that Spigel had unlawfully used their license number and held himself out as an agent of Frenchtown to sell automobiles that Spigel knew or should have known were stolen. On January 9, 1998, a trial justice of the Superior Court rendered a bench decision in which she granted the McCrorys' motion for summary judgment seeking indemnification from Spigel, based on the theory of an equitable right of indemnity, stating that "Spigel himself would be potentially liable to Tarbox for conveying stolen goods, if not criminally, at least negligently." Spigel has appealed.

■ ■ "It is well settled that this Court reviews the granting of a summary judgment motion on a de novo basis. *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996). In conducting such a review, we are 'bound by the same rules and analysis as those employed by the trial justice,' *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996), and '[a]ccordingly, we will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.' *Id.*" *Woodland Manor III Associates v. Keeney*, 713 A.2d 806, 810 (R.I.1998). "Moreover, a party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996).

■ ■ Spigel first argues that the McCrorys' claim against him as an individual is misplaced. He asserts that the McCrorys were required to file suit against the corporate entity, Smiling Mr. Bob, then proceed against Spigel individually only if they can successfully pierce the corporate veil. There is no basis to conclude that the McCrorys' claim against Spigel is misplaced. We distinguish the two separate parts of the McCrory–Spigel agreement: on the one hand, Spigel leased the service center to repair automobiles under the corporate name of Smiling Mr. Bob, and on the other, Spigel was authorized, as an individual, to sell cars for Frenchtown. Smiling Mr. Bob was not licensed by the state, nor was it authorized by Frenchtown, to sell automobiles. Further, it is clear from the sales forms and the evidence produced that Spigel sold the automobiles in his individual capacity utilizing the McCrorys' license. Accordingly, we conclude that there is no basis for the corporation to shield Spigel against individual liability for selling stolen automobiles using the McCrorys' license number.

■ ■ Spigel next argues that the trial justice erred in finding that the McCrorys could recover under a theory of equitable indemnity. The trial justice found that the requisite elements of equitable indemnification had been proved, and therefore summary judgment was appropriate. In *Muldowney v. Weatherking Products, Inc.*, 509 A.2d 441 (R.I.1986), we noted that the concept of indemnity is based upon the theory that a party who has been exposed to liability solely as a result of the wrongdoing of another should be able to recover from the wrongdoer. We stated the requisite elements as follows:

"In order to successfully assert an action for indemnity, the prospective indemnitee must prove three elements.

First, the party seeking indemnity must be liable to a third party. Second, the prospective indemnitor must also be liable to the third party. Third, as between the prospective indemnitee and indemnitor, the obligation ought to be discharged by the indemnitor." *Id.* at 443.

Spigel argues that the third element, that equity requires that the obligation be discharged by the potential indemnitor, is absent in this case. Instead, he argues that the McCrorys must show that Spigel was negligent, with the negligence causing damage to the McCrorys, in order to prove that element. We disagree.

In finding that third element present, the trial justice in this case noted that "[o]ur Supreme Court has held that this element can be satisfied by a showing that a potential indemnitor is at fault and that the prospective indemnitee is blameless." She stated that there was no evidence that the McCrorys were anything but blameless because they never saw the 4–Runner or any documents pertaining to its transfer, and therefore, the third element was satisfied. Spigel's assertion that the McCrorys must make a showing that Spigel was negligent is erroneous.

For the foregoing reasons, the defendant's appeal is denied, the summary judgment entered in the Superior Court is affirmed, and the papers in this case are remanded to the Superior Court.