**GREENSLEEVES, INC.**

v.

**LEE'S WHARF MARINA ASSOCIATION.**

No. 97–268–Appeal.

Supreme Court of Rhode Island.

June 2, 1998.

James F. Hyman and Evan S. Leviss, Newport, for Plaintiff.

Jeremiah R. Leary, Tiverton, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on May 5, 1998, pursuant to an order directing both parties to show cause why the issues raised by this appeal should not be summarily decided. The defendant, Lee's Wharf Marina Association (association), has appealed the granting of a partial summary judgment on its counterclaim against the plaintiff, Greensleeves, Inc. (Greensleeves). Having heard the arguments of counsel and reviewed the memoranda submitted by the parties, we conclude that cause has not been shown. Therefore, we shall decide the case at this time.

In December 1987, Lee's Wharf Realty Company, Inc. (developer) purchased real estate adjacent to Newport Harbor in the city of Newport, including lot Nos. 275 and 313, as identified on the Newport tax assessor's plat No. 32. The developer gave a mortgage on the property to Fleet National Bank (Fleet) and subsequently recorded a Declaration of Condominium (declaration) describing four phases of development. The initial phase, deemed mandatory by the declaration, involved the development of forty-five marina units, consisting of dock slips and accompa-

nying parking for unit owners. According to the hearing justice, lot No. 275 was contemplated for the parking spaces. The remaining phases, deemed optional by the declaration, involved the development of residential buildings on the land adjacent to the parking area for the slips. In 1988, Fleet executed a subordination agreement that provided that "[t]he mortgage is and shall be subordinate in each and every respect to: (i) that certain Declaration of Lee's Wharf Condominium * * *, and (ii) the Plats and/or Plans as defined in the Declaration."

The developer proceeded to sell most of the marina units, the purchasers thereof becoming members of the association. When lot No. 275 proved insufficient to accommodate a parking space for each of the unit owners, the developer allegedly gave the owners oral assurances that a portion of lot No. 313, which was not mentioned in the declaration, could be used as necessary for parking.

In November 1989, the association filed suit against the developer, demanding that the developer provide one parking space for each of the unit owners in accordance with the original conveyance to each owner. Thereafter, the association recorded a notice of lis pendens in respect to lot No. 313. A written settlement agreement that provided that the developer would expand the parking area onto a portion of lot No. 313 was never executed. In 1990, Fleet foreclosed on the mortgage after releasing "all its rights, title and interest" to the marina units that already had been sold by the developer and to "the applicable undivided interest in and to the Common Elements within the condominium project * * * *as established by and identified in the Declaration."* (Emphasis added.)

In December 1992, after having acquired title to six of the unsold units and to lot No. 313, Fleet conveyed said title to Property Asset Management, Inc. (PAMI), which in turn conveyed the property to Greensleeves by quitclaim deed in March 1994.

Greensleeves commenced this action on August 15, 1994, alleging that the association had interfered with its right to use lot No. 275 for parking, a right to which it claimed entitlement as owner of the six marina units.

Declaratory and injunctive relief, as well as damages, were sought. The association filed a counterclaim that in its third amended form, asserted, inter alia, that Greensleeves breached the alleged oral agreement between the developer and the association by refusing to provide sufficient parking for members of the association on a portion of lot No. 313. The association sought declaratory and injunctive relief, as well as damages. Greensleeves subsequently filed a motion for partial summary judgment on the association's counterclaim, maintaining that "[w]hen Lot 313 was conveyed from Fleet to PAMI and from PAMI to [Greensleeves], it was conveyed free of any special declarant rights or correlative obligations."

Following hearings, Greensleeves's motions for partial summary judgment and for entry of final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure were granted. The hearing justice observed that "if there was a fraud, let's say, or if there was a breach of agreement, it was the developer's conduct, if any deceptive conduct, if any, unintentional misrepresentation, whatever, but the developer, of course, is not a party to this litigation." In granting Greensleeves's Rule 54(b) motion, the hearing justice noted her concern that the issues raised in Greensleeves's complaint and in the association's counterclaim were "sufficiently similar [and] perhaps they should be combined in one appeal." Despite her concern, however, she granted the motion, concluding that "a delay may be unjust if it might eventually be keeping the lis pendens and [resulting in an] inability to finance [lot No. 313]." Judgment entered and the association filed a timely appeal to this Court.

General Laws 1956 § 34–36.1–3.04 governs the extent to which obligations and liabilities imposed upon a declarant by the Rhode Island Condominium Act are transferred to a third party. The statutory section cited by the association in support of its counterclaim pertains to "[t]he liabilities and obligations of persons *who succeed to special declarant rights.*" Section 34–36.1–3.04(e)(1). (Emphasis added.) However, a third party can succeed to special declarant rights only by recording an instrument evi-

**1142**

dencing the transfer of such rights in the municipality in which the condominium is located. Section 34–36.1–3.04(a). It is undisputed that Greensleeves recorded no such transfer; therefore, Greensleeves did not become a successor to special declarant rights. As such, Greensleeves incurred no concomitant obligation. Section 34–36.1–3.04(e)(1)(ii). Moreover, assuming arguendo that Greensleeves did succeed to any special declarant rights, no liability or obligation in respect to lot No. 313 would inhere because lot No. 313 was never subject to the declaration.

Because no genuine issue of material fact existed in respect to the association's counterclaim and Greensleeves was entitled to judgment as a matter of law in respect thereto, summary judgment on that claim was appropriate. *Rotelli v. Catanzaro,* 686 A.2d 91, 93 (R.I.1996). We therefore deny and dismiss the association's appeal and affirm the judgment of the Superior Court, to which we remand the papers in this case.