DECISION
This matter comes before the court on Plaintiff's Motion for Partial Summary Judgment. This Court has jurisdiction pursuant to Rule 56 of the Superior Court Rules of Civil Procedure.
 FACTS/TRAVEL[1]
The property at the center of this suit consists of four separate tax lots on Newport Tax Assessor's Plat 32, lots 275, 312, 313 and 314. This land was purchased by Lee's Wharf Realty Co. on December 2, 1987. Fleet National Bank held the mortgage.
In 1987, Lee's Wharf Marina (defendant) executed and recorded the declaration of condominium for Lee's Wharf Condominium. The condominium project was designed to be built in four phases. The Declaration states that the first phase of this project is mandatory but the other three were optional. The initial phase involved the development of forty-five marina units, consisting of dock slips and accompanying parking for unit owners. Lot number 275 was contemplated for the parking spaces.
Early into this project; the developer sold thirty-nine marina units. Each purchaser was assured that their slip included a separate, exclusive parking space. The developer retained possession of six units, M6-M11, which he planned to sell in conjunction with the residential units of the condominium phase. Those six units were to have parking spaces as well.[2] The parking for these six units was to be located beneath each residential building. Said buildings. Phases II and III of the project, were never constructed.
In 1990, after completing phase I, the developer, encountered financial difficulty and Fleet foreclosed on lots 312, 313, and 314. In 1994, after the property had changed hands several times, the Plaintiff Greensleeves, purchased M6-M11 as well as all of the remaining land save the current Association parking lot. Since the date of purchase, Greensleeves has had use of all common elements of the condominium except the parking lot.
The parking lot currently contains thirty-nine parking spaces, one space for each slip save the six purchased by Plaintiff. Plaintiff has been denied use of the Association's lot.
 Summary Judgment
Rhode Island Super. R. Civ. Proc. 56, governing summary judgment, requires a trial justice to determine the necessity of trial by identifying a genuine issue of material fact in dispute.Rotelli v. Catanzaro, 686 A.2d 91 (R.I. 1996). To avoid summary judgment, the party opposing the motion cannot rest upon conclusions or mere allegations or denials in the pleadings; rather, the party must affirmatively set forth competent evidence that raises a genuine issue to be resolved. Sisters of Mercy ofProvidence, Inc. v. Wilkie, 668 A.2d 650, 652 (R.I. 1996). A trial justice may properly grant summary judgment only when, after reviewing the evidence in light most favorable to the non-moving party, the trial justice concludes that no genuine issue of material fact exists and the moving party's claim warrants judgment as a matter of law. RI. Super. R Civ. P. 56(c);Harritos, et al. v. Cambio, et al., 683 A.2d 359 (R.I. 1996).
 Rights to Parking Lot
Plaintiff purchased six slips from Property Asset Management Inc., via Quitclaim Deed. Said deed purported to "constitute an assumption of the provisions of the Declaration of Condominium of Lee's Wharf Condominium, as amended, the by-laws of Lee's Wharf Condominium Association and of Lee's Wharf Marina Association."Exhibit E.
Plaintiff argues that the condominium parking lot is a common element of the condominium project and that plaintiff has been wrongfully denied use of this lot. The plaintiff seeks a declaration that it is entitled to full and free access to the condominium parking lot in the same manner and to the same extent as the other unit owners, and also seeks the issuance of an order enjoining the defendant from interfering with that full and free access.
Defendant argues that any claimed right Plaintiff may have had regarding the right to park in the Association's lot, is barred by the doctrine of laches. Therefore, Defendant states, Plaintiff is estopped from asserting that claim. Defendant also argues that while each of the original thirty-nine slip owners
were promised an exclusive parking spot, slips M6-M11 were to have separate parking in the proposed residential units of Phases II and III. Accordingly, Defendant argues that Plaintiff has no right to claim spaces in the existing lot
When this matter went before the Rhode Island Supreme Court in 1998, the Court stated that "the initial phase, deemed mandatory by the declaration, involved the development offorty-five marina units, consisting of dock slips and accompanyingparking for unit owners." Greensleeves v. Lee's Wharf,711 A.2d 1140 (R.I. 1998). A review of Plaintiff's Exhibit F reveals that units M6-M11 sold for the same price and, in many cases, a higher price than the other thirty-nine units. This Exhibit also indicates the percentage interest owners are responsible for paying on each unit. Again, this interest percentage is the same if not more than that of the other thirty-nine units.
The Defendant argues that Plaintiff "clearly understood long before Plaintiff's purchase of the foreclosed property that the position of the association was that M6-M11 had no fight to park in the Association lot." Defendant's Memorandum in Opposition toPlaintiff's Motion for Partial Summary Judgment at 6. This argument does not persuade the Court. It is of little or no consequence that Plaintiff purchased the property even though it knew of Defendant's position regarding Plaintiff's right to access the Association parking lot. Simply put, Plaintiff was aware of Defendant's position and disagreed with that position; hence this suit was fleet Defendant's mere assertion of its position does not render it correct. Therefore, Plaintiff's purchase of this land, even with knowledge of Defendant's position, does not serve to invalidate Plaintiff's instant challenge.
The Condominium Act defines "condominium" as "real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions. Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners? Section 34-36.1-1.03(7). Clearly the project hero fulls within the category of condominium. It is not disputed that each of the units are maintained as separate parcels in which the owners hold a fee interest. The definition of "common areas and facilities," under the Act, includes parking teas. G.L. § 34-36-3(3)(iii). Furthermore, § 34-36-7 of the Act states that:
 "each unit owner shall be entitled to an undivided interest in the common areas and facilities in the percentage expressed in the declaration . . . The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the declaration shall have a permanent character and shall not be altered without the consent of all of the unit owners expressed in an amended declaration duly recorded."
From the undisputed facts, this Court finds that when the Declaration of condominium was recorded, forty-five slips were intended and each was to be provided a parking spot. The forty-five slips and the parking lot were included in Phase I, the mandatory phase, of the construction project. The developer decided to withhold six of those slips for inclusion in the prospective residential phases should they be built. As is now known, those residential units were a pipe dream and the six slips remain without parking spots. Under the Condominium Act; the parking lot is a common area. Plaintiff pays the same fees as the other thirty-nine inhabitants and, therefore, shares a right to park in the Association's lot. Plaintiff maintains this right regardless of his status as owner of the two adjacent, vacant lots
For the aforementioned reasons, this Court greats Plaintiff's Motion for Partial Summary Judgment.
[1] These acts are in large part adopted from Greensleeves,Inc. v. Lee's Wharf Marina Association, 711 A.2d 1140 (R.I. 1998).
[2] In November 1989, the association filed suit against the developer, demanding that the developer provide one parking space for each of the unit owners in accordance with the original conveyance to each owner. The association recorded a notice of us pendens with respect to lot 313. A written settlement agreement that provided that the developer would expand the parking are onto a portion of lot 313 was never executed.