VINCENT FERLA *d.b.a.* T. & F. MANUFACTURING COMPANY *vs.* COMMERCIAL CASUALTY INSURANCE COMPANY.

JUNE 18, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This is a bill in equity brought to reform a "Mercantile Open Stock Burglary Policy" issued by the respondent.   The cause was heard by a justice of the superior court on bill, answer and proof.   Thereafter the trial justice, in a decision from the bench, denied the prayer of the bill and a decree was entered in accordance with his decision.   The complainant has duly appealed to this court from the entry of that decree.

It appears in evidence that in 1944 the complainant was the owner of a small jewelry manufacturing business in the city of Providence, in which business, according to his testimony, he was obliged to use a greater amount of sterling silver than usual because of war restrictions on the use of baser metals in the manufacture of jewelry.   In May of that year he suffered a loss by "burglary," which loss was partially covered by insurance in another company.   He then went to his broker, John F. D'Errico, who was registered with the state insurance department as an agent of the respondent, in an effort to obtain additional coverage for the loss by burglary of sterling silver.   Following certain inquiries and investigations by D'Errico and others to which we will presently refer, D'Errico, early in

May, mailed to the complainant the policy in dispute in this cause.

A typewritten endorsement, which is plainly distinguishable from all printed matter, is attached to the policy. This endorsement provides, among other things, as follows: "In consideration of the reduced premium charged for the policy of which this endorsement forms a part, it is agreed that the insurance as provided thereunder shall not apply to gems, precious stones, or articles of platinum or sterling silver." The endorsement is signed "John R. Cooney President John F. D'Errico Agent." The respondent makes no contention that the policy as issued is void or invalid and freely admits that the complainant is entitled to recover for any loss covered by the policy. Furthermore, no question of fraud is involved. The sole question before us is whether the exclusion of sterling silver from coverage was due to a mutual mistake.

The conflicting evidence in substance was as follows. Complainant testified that he asked D'Errico to secure for him a policy to cover his entire stock, particularly sterling silver; that D'Errico and Harry C. Beecher, who was connected with the insurance office of Pieper & Wilder, general agents for the respondent, visited his factory and assured him that he would get the desired policy; that a binder of "burglary open stock" insurance in respondent's company was received by him in the form of a letter from Pieper & Wilder on the stationery of the respondent, which letter was dated May 10, 1944 and signed by Beecher as special agent; that shortly thereafter he received the policy in question but he did not examine it as he could not read English; and that it was only when sometime thereafter he suffered a loss of sterling silver by burglary that he discovered the policy excluded coverage of such material.

Complainant called both D'Errico and Beecher as his witnesses. D'Errico, admitting that the complainant asked him for additional insurance to cover loss of sterling silver by burglary, denied that he gave him any assurance in the

matter. On this point he testified as follows: "Well, he (the complainant) said he needed further coverage. I said, 'I don't know what we can do for you but I will be glad to see what we can do.'" Following this conversation he spoke to Beecher who told him: "I am going to try my people but I don't know, of course. I don't know, of course, if we can or not." D'Errico further testified that he had never issued a burglary insurance policy for the respondent and that if a "policy was written by the main office or special agency, I would have a right to sign the policy as agent."

Beecher testified positively that Pieper & Wilder had no authority to issue a burglary insurance policy; that an application for such a policy had to be submitted to and acted upon by respondent's home office; that, although he viewed the premises in complainant's presence, he made no promise to him as to what kind of policy the respondent would issue; and that he then referred the entire matter to James B. Aldrich, respondent's state agent who was specially authorized to investigate and recommend the extent of the risk that the company could reasonably assume on an application for burglary insurance. Aldrich, who was called as a witness by the respondent, testified that, after inspecting the premises and suggesting certain changes as safety precautions against burglary, on May 5, 1944 he wrote to the respondent's home office recommending acceptance of the risk as set forth in the policy under consideration. The policy was then prepared there and forwarded to D'Errico, who signed it as respondent's agent and sent it by mail to the complainant.

There is another bit of evidence to which brief reference need be made. The complainant testified that when he claimed compensation under this policy for loss by burglary of various items, including sterling silver, Lloyd G. Cooper, respondent's adjuster, said: "You have got a policy. We have got to pay on everything." As far as we can ascertain the complainant did not show him the policy at that

time. Cooper, who testified for the respondent, denied making any such statement.

On the conflicting evidence the trial justice found that D'Errico, Beecher, and Pieper & Wilder had no authority to issue a policy of the type desired by the complainant; that Aldrich alone had authority to recommend the issuance of a policy of that type; and that the respondent, in the exercise of its sole and independent judgment, issued a policy in strict accordance with Aldrich's recommendation, which excluded coverage of sterling silver. The gist of the decision by the trial justice was that the complainant had failed to prove that the policy as written had been issued by mutual mistake of the parties.

Complainant's main contention is that D'Errico, being a registered agent of the respondent and acting as he did in cooperation with Beecher, of Pieper & Wilder, bound the respondent to issue a burglary insurance policy covering sterling silver. In reaching this conclusion he relies strongly on his version of what D'Errico told him when the application for insurance was made; and further that D'Errico signed the policy as agent of the respondent, and that he attached a label on the outside with the word "Agent" under his name. We are unable to agree with the complainant's contention in the circumstances of record, especially since such contention completely disregards material evidence of controlling force.

Whether a person is the agent of an insurance company and if so the extent of his authority are matters of fact. Mere registration with the state insurance department amounts to nothing more than the securing of a license to sell insurance for a given company in this state. Such a license ordinarily does not in any way fix the nature of the agency or the extent of the agent's authority. *Mancini* v. *Yorkshire Ins. Co. Ltd.*, 54 R. I. 79, 82. · Furthermore, it is well settled that an insurance agent who is empowered merely to solicit or accept applications for insurance is the agent of the applicant and not the agent of the company.

*Wolf* v. *Prudential Ins. Co. of America,* 62 R. I. 270; *Salvate* v. *Firemen's Ins. Co.,* 42 R. I. 433. Giving the complainant the benefit of all reasonable inferences, a consideration of the entire evidence supports the finding of the trial justice that D'Errico was a general insurance broker and at most a soliciting agent of the respondent; that neither he nor Pieper & Wilder, respondent's general agent, had any authority to issue a burglary insurance policy of the type desired by the complainant; and that a policy for such insurance would be issued only by respondent's home office.

In the absence of fraud, equity will reform a written instrument when it appears that there has been a *mutual* mistake in its execution. This rule and the reasons upon which it rests are clearly stated in *Diman* v. *Providence, Warren, and Bristol R.R.,* 5 R. I. 130, and *Allen* v. *Brown,* 6 R. I. 386. A policy of insurance comes squarely within the rule. Moreover, such mistake must be proved by clear and convincing evidence. *Mancini* v. *Yorkshire Ins. Co. Ltd., supra; Allen* v. *Brown, supra.* The complainant was therefore bound to prove in such manner that there was a mutual mistake as to the extent of the coverage in the policy that was actually issued to him.

There is no evidence that the respondent, which retained in itself exclusive authority to issue policies for burglary insurance, had any notice that complainant desired a policy different from the one that he had received. Nor was any effectual means taken by the complainant, when the policy in question was delivered to him, to ascertain its contents and to apprise the respondent that it was not in accordance with his desires. If there was a mistake in the circumstances it was the mistake of the complainant himself, the respondent having been induced to contract and act for many months in the belief that the policy was exactly what had been ordered.

Complainant cannot avoid the effect of his own conduct in failing to observe the plain endorsement of an exclusion

in the policy on the ground that he could not read English. In legal contemplation knowledge of the terms of a policy of insurance is possessed by the insured even though he be illiterate. *Inventasch* v. *Superior Fire Ins. Co.*, 48 R. I. 321. We therefore find no reason to disturb the decision of the trial justice.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Paul & Motta, Alfred E. Motta, Santi J. Paul,* for complainant.

*Perkins, Higgins & McCabe, James A. Higgins, Eugene V. Higgins,* for respondent.