ANTONIO VOTTA *et ux. vs.* GEORGE E. JOHNSON.

MAY 12, 1959.

PRESENT: Roberts, Paolino and Powers, JJ.

POWERS, J. This bill in equity was brought to compel the respondent to remove a portion of a garage and wall located on land which the complainants allege to have purchased from the respondent. The cause was heard by a justice of the superior court on bill, answer in the nature of a cross bill, and proof. Thereafter a decree was entered denying and dismissing the bill and ordering reformation of the deed from the respondent to the complainants to show the true intent of the parties as prayed for in the respondent's cross bill. The cause is before us on the complainants' appeal from such decree.

The evidence discloses that on December 6, 1927 respondent purchased from John McLaren and wife two contiguous lots of land located in the town of North Providence and designated on the recorder's plat as lots Nos. 181 and

182. The following year respondent built a house and garage on lot 182 and the garage extended approximately six feet across the line into lot 181. In March 1953 he constructed a wall running from the back line of the garage northerly so that the rear of the garage and the wall divided the two lots.

In July 1953 complainant Antonio Votta observed a for sale sign on the unimproved lot. He called on respondent, whose name appeared on the sign, and learning that he was asking $1,100 for the lot Votta offered $1,050 which offer respondent accepted and gave him a receipt for $150 which Votta paid to bind the sale. This testimony is not in conflict.

The respondent testified that at the time he constructed the wall he measured the distance between the wall and the easterly line of lot 181 and found it to be 44.5 feet; that he wrote the dimensions of the lot on the receipt which he gave to Votta as being 97.62 by 44.5 feet; that Votta left without the McLaren deed to have a title company prepare a conveyance from Johnson to the Vottas; that Votta returned later and requested the McLaren deed because the title company was having difficulty in locating lot 181; that Johnson gave Votta the deed; and that on August 17, 1953 he went with complainants to the Mortgage Guarantee & Title Company where without reading it he signed the deed conveying lot 181 to complainants.

The complainant Votta testified that the dimensions of the lot were not written by respondent on the back of the receipt; that he had lost the receipt; and that Johnson gave him the McLaren deed at their first meeting when Johnson agreed to sell and Votta agreed to buy the lot in question.

The McLaren deed from which the title company prepared the deed from Johnson to complainants described lots 181 and 182 as forming one tract, being 100.82 feet on the northerly side running from east to west, 100 feet on the southerly side running from east to west, 97.63 feet on

the easterly side and 84.76 feet on the westerly side. There appears to have been no division of lots 181 and 182 until the preparation of the deed by the title company from Johnson to the Vottas. It is obvious that in drafting said deed the title company simply divided the tract in half, lot 181 being described therein as 50.41 feet on the northerly side and 50 feet on the southerly side, the boundaries running from east to west. In reality respondent had previously divided the tract by erecting the garage and wall so that lot 181 when viewed by complainant Votta was approximately 44.5 feet from east to west.

After the deed was executed the complainants, preparatory to building their dwelling, had Santo Sacchetti, an engineer, stake out a foundation in accordance with the dimensions stated in the deed. Several months after the completion of the house the engineer returned and surveyed lot 181. The complainant Votta then spoke to respondent and told him that the lot sold to them did not contain the dimensions set forth in the deed of August 17, 1953. A few months later respondent sought to have complainants execute a corrective deed but they refused.

On the above facts complainants' bill alleges "that said respondent intended to deceive your complainants at the time he conveyed said parcel of land and described the same as containing measurements of 100 by 50, when in reality said parcel contained 100 by 44 feet, by virtue of his garage and wall occupying six feet of land of said parcel conveyed to your complainants * * *."

The trial justice found "that the removal of a portion of the garage would result in great damage to the remainder of the garage and that the removal of the wall would destroy its value * * *." He further found that complainant Votta did not know, nor was he concerned with, the exact dimensions of the lot; that whatever the dimensions, he was aware of the physical layout of the lot; that the wall, fence and garage clearly represented a dividing line be-

tween what respondent retained and what he sold to complainants; and that at the time of their original talk in July 1953 respondent intended to sell and complainant Votta to purchase that portion of lot 181 lying easterly of the garage and wall.

The issues in this case, as correctly stated by the trial justice, are (1) did respondent intend to deceive complainants by conveying more land than he intended to deliver, and (2) was there a mutual mistake of fact which, if not remedied, would result in an intolerable hardship and loss to respondent?

On the first issue the trial justice held that complainants failed to sustain their burden of proof that respondent intended to deceive them. We have examined the record and cannot say that he was clearly wrong.

On the second issue the trial justice held that the deed of August 17, 1953 did not express the true intent of the parties and he ordered it reformed to show that the parties intended the dimensions of the lot sold by respondent to complainants to be, namely, 97.62 feet by 44.5 feet. He stated: "It would be a very grave injustice to the respondent to allow complainants to enjoy the fruits of a mistake between the parties as to the sale and purchase of the land in question, particularly when, in the judgment of this Court, the complainants sought to take advantage of what they discovered after the original discussion between Johnson and Votta. A failure on the part of a court of equity to remedy such mistake would work an intolerable hardship upon and loss to the respondent."

It is clear from the transcript that complainants did not intend to purchase, nor did they expect to receive, any portion of respondent's premises on which the garage and wall were located. We are of the opinion that the trial justice properly found that there was a mutual mistake of fact and correctly held that respondent's deed to com-

76

plainants should be reformed in these equity proceedings to conform to the true intent of the parties.

It is well settled that in proper circumstances a court of equity will not deny relief even though the party seeking relief did not read the instrument he seeks to have reformed. *Perkins* v. *Kirby*, 39 R. I. 343, 353; *Dwyer* v. *Curria*, 52 R. I. 264.

In the instant case respondent entrusted to complainants the preparation of the deed for the conveyance of the actual premises which complainants intended to purchase and respondent intended to sell.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Ralph Rotondo, Michael Addeo,* for complainants.

*Higgins & Slattery, William C. Dorgan,* for respondent.