270 A.2d 915.

CORA HOPKINS *vs.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *et al.*

NOVEMBER 13, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

680

JOSLIN, J. In this civil action Cora Hopkins and Adelia Potter, surviving sister and divorced wife respectively of Walter E. Sherman, are litigating the question of who is entitled to the proceeds of an insurance certificate for $3,000 issued by The Equitable Life Assurance Society of the United States on Walter's life. The case was tried in the Superior Court to a trial justice sitting without a jury. After judgment awarding the death benefits to Cora, Adelia appealed.

The facts are not in dispute. To the extent feasible they are stated chronologically. In 1955 Walter, who was then married to Adelia, went to work as a watchman for the General Controls Co., Hammel-Dahl/Foster Engineering Division. As one of the fringe benefits of that employment he was insured under a group life and accident policy issued by The Travelers Insurance Company. The certificate of insurance received by him designated "Adelia Sherman — Wife," as his beneficiary, and reserved to him "the right to change the beneficiary." Walter exercised that right in September 1960, and attached to the

certificate is a change of beneficiary form directing that the proceeds payable under the policy in the event of his death be paid to "Cora Hopkins — Sister." Coincident with that change Walter also substituted Cora for Adelia as the beneficiary under a $1,000 life policy issued by The Prudential Insurance Company of America.

About the time of the foregoing beneficiary changes, Walter had separated from his wife because of marital difficulties and simultaneously had changed his residence to his sister's home where he lived until he built a small home for himself four years later. In the meantime, however, the marital difficulties led to "real bitter" divorce proceedings. Adelia was the petitioner and Walter the cross-petitioner. A property settlement was agreed to pursuant to which Adelia received $1,500, and on December 6, 1961, a final decree was entered granting Walter's cross-petition and dissolving the childless marriage. About four months later Adelia remarried. She has since been known as Adelia Potter. The record does not disclose that Walter ever knew she remarried, or indeed that he ever saw or spoke to her following their separation.

In 1963 General Controls Co., Hammel-Dahl/Foster Engineering Division, was acquired by ITT General Controls Co., a subsidiary of International Telephone and Telegraph Corporation. Within a few months it changed insurance carriers and Equitable became the insurer on the group life and accident policy. Walter received a new certificate of insurance dated January 2, 1964. It is an exhibit in the case. Although it does not name a beneficiary, it does provide that "The beneficiary shall be the person or persons designated, in accordance with the Employee's election, on the insurance records maintained in connection with the insurance under the policy." A further stipulation reserves to the named employee the right

to change his beneficiary designation by written request filed through the employer.

Another exhibit in the case is a 4" x 6" card which came from the employer's records and which, for want of a more convenient designation, we refer to as an "enrollment card." It is signed by Walter, carries the date "3/25/64" in his handwriting, and in typing, in addition to certain miscellaneous information not here pertinent, gives the beneficiary's name as "Sherman, Adelia" and her relationship to Walter as "Wife." There is no evidence whatsoever that Walter, subsequent to his 1960 designation of Cora as his beneficiary, requested Travelers, Equitable or his employer to revoke that designation, or to restore Adelia as his beneficiary.

Walter died on May 4, 1968. The certificates of insurance issued by Travelers and Equitable, as well as other valuable papers of Walter's, were in Cora's possession. Her brother had entrusted them to her for safekeeping. Those papers did not include the March 25, 1964 enrollment card or a copy thereof, for the original was retained by the employer, and Walter had not received a copy.

Shortly after Walter's death Cora made demand upon his employer for the death benefits due under the group policy. The company rejected her claim on the ground that its records did not indicate that she was the beneficiary under the policy. Adelia made no claim under the policy until August of 1968, and then only after being advised by the employer that it believed she was the beneficiary. Thereafter, Cora commenced this suit naming both Adelia and Equitable as defendants. Pending termination of the litigation, Equitable was enjoined from paying Adelia the proceeds of the policy.

Based upon the foregoing, the trial justice in substance found that a company clerk prepared the enrollment card as a part of the routine connected with the employer's

switch of insurance carriers; that the clerk listed "Sherman, Adelia" as the beneficiary and described her as Walter's wife without prior consultation with Walter about his choice of beneficiary and in reliance solely upon the company's records; that in examining those records he overlooked or ignored the 1960 change of beneficiary from Adelia to Cora and the absence of any record indicating a request by Walter for a subsequent change; that Walter, even though he signed the enrollment card designating "Sherman, Adelia" — "Wife" as his beneficiary, obviously did not intend to substitute Adelia for Cora as his beneficiary. In arriving at these conclusions, the trial justice was mindful of and commented upon the divorce, "the bitterness" which led to it, and the lack of any reasonable explanation as to why Walter would name Adelia Sherman, his divorced wife, as his beneficiary and state that she was his "Wife."

Adelia's challenge to those findings is clearly without merit. True they are inferential, but a trial justice's inferential findings, no less than his determinations on credibility, will be accepted by us as valid and binding so long as the inferences he draws, whether affirmative or negative, reasonably and logically flow from established facts. *Spouting Rock Beach Ass'n* v. *Garcia*, 104 R. I. 451, 460, 244 A.2d 871, 876; *Hagan* v. *Osteopathic General Hospital*, 102 R. I. 717, 726, 232 A.2d 596, 601; *Cinq-Mars* v. *Travelers Ins. Co.*, 100 R. I. 603, 613, 218 A.2d 467, 473; *Arden Engineering Co.* v. *E. Turgeon Constr. Co.*, 97 R. I. 342, 348, 197 A.2d 743, 746. Here the facts were undisputed, the inferences drawn logical and reasonable. It would be exceedingly difficult to read the evidence without almost irresistibly coming to the same conclusions.

The question, then, is whether the inferential findings justified the trial justice's legal conclusion that the death benefits, due under the Equitable certificate of insurance,

should be paid to Cora. Adelia argues that the enrollment card on which she was designated as beneficiary was the highest evidence of who Walter intended as his beneficiary; that it was his duty to know and learn its contents before he signed it; and that, even though he may have signed the card in ignorance of its character, the express terms of what he assented to should not be ignored absent evidence — and there is none here — that his assent was induced by fraud, misrepresentation, violence, undue influence or the like. The general principles invoked by Adelia, though subject to nuances, have long been settled. *Dante State Bank* v. *Calenda,* 56 R. I. 68, 183 A. 873; *Weil & Co.* v. *Quidnick Mfg. Co.,* 33 R. I. 58, 80 A. 447. Without going into those nuances, a sufficient answer to Adelia's argument is that the principles she relies upon, although applicable when a party seeks to rescind or to cancel an instrument on the ground of unilateral mistake, are inapposite when he seeks to reform because of mutual mistake. Relief in actions for reformation, as distinguished from those for rescission or cancellation, will not be denied merely because a party to the agreement, even though not induced by fraud, undue influence, mistake, or the like, signed the instrument unaware of its character or believing it to have a different purport. *Votta* v. *Johnson,* 89 R. I. 71, 76, 151 A.2d 112, 114; *Dwyer* v. *Curria,* 52 R. I. 264, 268, 160 A. 206, 207; *Perkins* v. *Kirby,* 39 R. I. 343, 353, 97 A. 884, 888.

In this case Cora invokes the unquestioned jurisdiction of equity to reform a written instrument. *Allen* v. *Brown,* 6 R. I. 386, 396. That jurisdiction applies to insurance policies as well as to other agreements, *Ferla* v. *Commercial Casualty Ins. Co.,* 74 R. I. 190, 195, 59 A.2d 714, 716, and it exists irrespective of "* * * whether the question arises between the parties to the instrument, or those

claiming under them in privity * * *." *Allen* v. *Brown, supra* at 396.

To warrant reformation it must appear that by reason of a mistake, common to both parties, their agreement fails in some material respect correctly to reflect their prior completed understanding. *Vanderford* v. *Kettelle,* 75 R. I. 130, 142, 64 A.2d 483, 488. And there can be no reformation unless the variance between what is written and what was originally intended, as well as the mutual mistake, are demonstrated by clear and convincing evidence. *Kornstein* v. *Almac's, Inc.,* 98 R. I. 318, 323, 201 A.2d 645, 648; *Vanderford* v. *Kettelle, supra,* at 139, 64 A.2d at 487; *New England Box & Barrel Co.* v. *Travelers Fire Ins. Co.,* 63 R. I. 315, 320, 8 A.2d 805, 807.

Here the undisputed evidence compellingly yields to the inference that the naming of Adelia, instead of Cora, as the beneficiary on the enrollment card was a mistake originating with the employer's failure to ascertain who was the then existing designee. That mistake was shared by Walter who signed the enrollment card undoubtedly believing that it named Cora, and not Adelia, as his beneficiary. A substantially similar fact situation existed in *Prudential Ins. Co. of America* v. *Glasgow,* 208 F.2d 908 (2d Cir. 1953.) There an insurance certificate was issued to the insured when the master group life policy was rewritten. That certificate listed as beneficiaries persons whose prior designations had been revoked rather than the person who was the then existing designee. After the insured's death, reformation was granted on the ground of mutual mistake. To the same effect see *Jeske* v. *General Accident Fire & Life Assurance Corp.,* 1 Wis.2d 70, 83 N.W.2d 167; *L. Lewitt & Co.* v. *Jewelers' Safety Fund Soc'y,* 249 N. Y. 217, 164 N. E. 29.

In the case before us, just as in the cases cited, clear and convincing evidence demonstrates that, as a result

of mutual mistake, the designation of Adelia as Walter's beneficiary on the enrollment card failed to correctly express the agreement of the parties. In those circumstances it was not error for the trial justice to reform the beneficiary agreement and to award Cora the proceeds of the policy.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Keefer and Kirby, Scott K. Keefer,* for plaintiff.

*Seth K. Gifford,* for defendant Adelia Sherman Potter.