DECISION
Pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, this matter comes before the Court on a motion for summary judgment filed by Plaintiffs UAG West Bay AM, LLC, UAG Realty, LLC, and Car War, LLC ("Plaintiffs"). Plaintiffs seek a grant of summary judgment on all counts of their Amended Complaint and on the Counterclaim filed by Nicholas E. Cambio ("Cambio") and the Bald Hill Commons Condominium Association, Inc. (the "Association"). Cambio and the Association (collectively "Defendants") have filed a timely objection and a cross-motion for summary judgment on all counts contained in their Counterclaim and in Plaintiffs' Complaint. Plaintiffs have timely objected to Defendants' cross-motion. Jurisdiction is pursuant to G.L. 1956 § 8-2-13,[1] § 34-36.1-1.08,[2]
and § 34-36.1-1.12.[3]
 Facts and Travel
Plaintiffs filed the initial complaint seeking to enjoin Defendants from interfering with their right to access and use Bald Hill Commons Condominium (the "Condominium"). Further, Plaintiffs sought a resolution to a dispute that had arisen between the parties over the amount of monthly maintenance expenses Plaintiffs were obligated to pay Defendants. Defendants, in this action, are the Association, which is comprised of the Condominium's unit owners and Cambio, the Association's president. Plaintiffs' interest in the Condominium is disputed and is, in fact, the subject of these cross-motions for summary judgment. According to Plaintiffs, Car War is the owner of three units in the Condominium, as well as the holder of special declarant rights in the Condominium (the "Declarant Rights"). The Declarant Rights, to be described more fully infra, are fundamentally unexercised development rights and other special declarant rights in the Condominium. Plaintiff Car War paid $2.16 million for the Declarant Rights in April of 2003.
The dispute over Plaintiffs' ownership interest in the Condominium arose when, following the filing of the complaint, Plaintiffs discovered a conveyancing error, which had occurred in the transfer of the Declarant Rights. Thereafter, Plaintiffs sought to remedy the conveyancing defect by executing and filing corrective deeds. However, Defendants now challenge whether Plaintiff Car War ever received valid title to the Declarant Rights in light of the error. Defendants also contend that Plaintiffs should be required to pay an amplified monthly fee to the Association due to, what Defendants allege to be, Plaintiffs' increased use of the Condominium's common elements. The extent to which Plaintiffs have either increased their use of the common elements or overburdened such elements is a disputed factual issue and therefore cannot be properly adjudicated on a motion for summary judgment.[4] For that reason, this Court addresses only the issue of whether Plaintiffs possess proper title to the Declarant Rights. The following undisputed facts are relevant to the determination of this issue.
The Condominium was established pursuant to a Declaration of Condominium, dated July 13, 1990 (the "Original Declaration"). Defendant Cambio, along with Vincent A. Cambio and Roney A. Malafronte, were the original declarants (the "Original Declarants"). The Original Declaration was later amended and restated by an Amended and Restated Declaration of Condominium, dated July 1, 1991 (the "Amended Declaration"). The Amended Declaration, as further amended, is controlling in this case.[5] The Condominium is a phased commercial condominium development, consisting of approximately eighty-two acres located off Route 2 in Warwick, Rhode Island. The Condominium includes several commercial buildings, including national and regional chains, such as Home Depot, Best Buy, Sports Authority, and Starbucks. Plaintiff Car War owns a piece of property abutting the Condominium, which it leases to UAG West Bay AM through its affiliate UAG Realty (the "Inskip Property"). UAG West Bay AM operates an Inskip car dealership on this property, doing business under the name "Inskip Auto Mall."
At the time the Condominium was created, it was subject to a mortgage dated April 29, 1987 (the "Mortgage"), which was granted by the Original Declarants to Marquette Credit Union ("Marquette"). Marquette agreed to subordinate its senior mortgage interest in the Original Declaration but took a security interest in the Declarant Rights. The Original Declarants had reserved the Declarant Rights for themselves, and their successors and assigns pursuant to § 34-36.1-2.05(a)(8) of the Rhode Island Condominium Act (the "Condominium Act"). The Declarant Rights, which included the right to declare units, add real estate and to change designated parking areas, were reserved until the date of June 30, 2040. The areas reserved for future development were identified as Phases II, III, and IV of the Condominium.
As a result of the savings and loan crisis of the early 1990s, Marquette went into receivership in March of 1991. Edward D. Pare, Jr. (the "Receiver") was appointed the Receiver of the Estate of Marquette Credit Union. The Receiver was thereby vested with rights, title and interest in all of Marquette's property, including the Mortgage. The Rhode Island Depositors Economic Protection Corporation ("DEPCO") later assumed the deposit liabilities of Marquette and administered the Marquette receivership under its court-appointed power of attorney. By 1994, the Original Declarants had defaulted on their obligations under the Mortgage. On or about October 7, 1994, DEPCO, acting under their power of attorney for the Receiver, deeded to the Receiver its interests in the Condominium. This document was entitled the "Mortgagee's Deed" and was signed by John F. McJennett, III ("McJennett"), the authorized representative for DEPCO, acting under the power of attorney for Marquette. McJennett signed the deed as both grantor and grantee.
In 1995, a series of transfers of the Declarant Rights began that were later discovered not to have complied with the conveyancing requirements of the Condominium Act. The first transfer occurred on or about January 17, 1995, when DEPCO, again acting under the power of attorney for the Receiver, conveyed the Receiver's interest in the Condominium to itself via a deed (the "Receiver's Deed"). McJennett signed the Receiver's Deed as the authorized representative of DEPCO; however he only signed his name once. The second transfer occurred on or about December 19, 2001, when DEPCO conveyed its interest in the Condominium to Route 2 Investment Realty, LLC ("Route 2") via a deed (the "DEPCO Deed") for the sum of $810,000. The DEPCO Deed was recorded in the City of Warwick Land Evidence Records; however, Route 2, the transferee, did not countersign the deed. The third and final transfer occurred on or about April 28, 2003, when Route 2 conveyed its interest in the Condominium to Plaintiff Car War via a deed (the "Route 2 Deed") for the sum of $2,160,000. The Route 2 Deed was also recorded in the City of Warwick Land Evidence Records; however, Car War, the transferee, did not countersign the deed.
Section 34-36.1-3.04(a) of the Condominium Act requires that an instrument purporting to transfer declarant rights must be (1) written, (2) evidenced in the land evidence records of the particular municipality, and (3) signed by the transferee in order to be effective. This signature serves as the transferee's acknowledgement of the rights and obligations that are incident to the receipt of declarant rights. The Receiver's Deed, the DEPCO Deed, and the Route 2 Deed all included the transferee's name and the transferor's signature; however, all failed to include the transferee's signature. Subsequent to the commencement of this action, Plaintiffs, while conducting due diligence, discovered this error and attempted to remedy the defect by executing and recording corrective instruments. The transferees that initially failed to sign the deeds, signed corrective instruments evidencing that the Declarant Rights had been transferred to them and that they had accepted all resultant obligations. On February 16, 2005, Car War executed and recorded a corrective instrument entitled "Acceptance Pursuant to RIGL 34-36.1-3.04" to remedy the defective Route 2 Deed. This document included Car War's signature, as transferee of the Declarant Rights, and an affirmative statement accepting all rights and obligations incident to the transfer. On February 17, 2005, Route 2 executed a similar corrective acceptance of the Declarant Rights, in order to remedy the DEPCO Deed. Thereafter, on June 28, 2006, the State of Rhode Island, as successor to DEPCO, executed a similar corrective acceptance of the Declarant Rights, in order to remedy the Receiver's Deed. The corrective instruments all provided that the transferee's acceptance of the Declarant Rights dated back to the original transfers. Defendants here contest the legitimacy of these corrective instruments and claim that the lack of a contemporaneous signature on the original deeds was an incurable and fatal conveyancing error.
Further relevant to these cross-motions, is Car War's exercise of the Declarant Rights to create additional "land only units" within the Condominium. On February 15, 2005, Car War exercised the Declarant Rights and created the Condominium's seventh land only unit ("Unit 7") by executing a Fourth Amendment to the Amended Declaration ("Fourth Amendment"). Car War's exercise of the Declarant Rights was pursuant to the Amended Declaration sec. 6.1 and § 34-36.1-2.10(a) of Condominium Act. Thereafter, on December 28, 2005, Car War, following the same procedures, created two additional land only units ("Unit 8" and "Unit 9") by executing the Fifth Amendment to the Declaration ("Fifth Amendment"). Car War then leased Units 7, 8, and 9 to Plaintiff UAG West Bay AM for use as employee parking and storage of the Inskip dealership's excess automobile inventory. UAG West Bay AM has since paid all taxes associated with the three units, as well as all utilities and other associated costs. Access to Units 7, 8, and 9 is provided via the common elements of the Condominium. Use of the common elements was made proper via the Amended Declaration, which reserved an easement that allowed all declarants to use the common elements to service any property they may own or control in the vicinity. In this case, the neighboring property is the Inskip Property.
In their cross-motion, Defendants claim that Car War does not have good and marketable title to Units 7, 8, and 9. Defendants base this claim on their contention that the Declarant Rights were not properly transferred and as such Car War had no authority to create the three units. Plaintiffs assert that the conveyancing errors have been satisfactorily remedied and therefore they properly own the Declarant Rights and Units 7, 8, and 9. For the reasons set forth herewith, this Court agrees with Plaintiffs and accordingly enters a grant of partial summary judgment in their favor, on the issue of title to the Declarant Rights.
 Standard of Review
It is well settled that "[s]ummary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law." Konar v. PFL LifeIns. Co., 840 A.2d 1115, 1117 (R.I. 2004). Therefore, "the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter before the court that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Robert Palmisciano v.Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992). Furthermore, "a litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Tanner v. The Town Council of East Greenwich etal., 880 A.2d 784, 791 (R.I. 2005) (quoting Lucier v. ImpactRecreation, Ltd., 864 A.2d 635, 638 (R.I. 2005)).
 Argument
The Condominium Act states that "[n]o special declarant right created or reserved under this chapter may be transferred except by an instrument evidencing the transfer recorded in every municipality in which any portion of the condominium is located. The instrument is not effective unless executed by the transferee." Sec. 34-36.1-3.04(a). Plaintiffs and Defendants are both in agreement that the Receiver's Deed, the DEPCO Deed, and the Route 2 Deed, at their respective dates of execution, did not comply with § 34-36.1-3.04(a). Plaintiffs and Defendants do, however, disagree as to the extent that this non-compliance affects Plaintiffs' interest in the Condominium. Plaintiffs assert that the omission of the transferee's signature was a technical conveyancing error that was the result of the mutual mistake between the parties to the transactions. As such, they claim that this mutual mistake is subject to reformation by this Court. Defendants, in the alternate, argue that the omission of the transferee's signature was a fatal defect and they, therefore, are the rightful owners of the Declarant Rights. Defendants maintain that the lack of counter-signatures on the three deeds resulted in the automatic termination of the Declarant Rights and therefore these rights could not have been revived in subsequent instruments.
In advancing the above argument, Defendants rely, in part, onAmerica Condominium, Inc. v. IDC, Inc., 844 A.2d 117 (R.I. 2004), aff'd, 870 A.2d 434 (R.I. 2005) and Commissioner's Comment 3 to § 34-36.1-3.04. This Court finds Defendants' reliance on both America Condominium, Inc. v. IDC, Inc. and the Commissioner's Comment to be misplaced. Commissioner's Comment 3 states that "[t]he transfer by a declarant of all of his interest in a condominium project to a successor, without a concomitant transfer of the special rights of a declarant pursuant to this subsection, results in the automatic termination of such special declarant rights and of any period of declarant control." Sec.34-36.1-3.04 cmt. 3. Defendants read this language to suggest that because Car War and its predecessors in interest failed to include the transferee's signature on the deeds, the Declarant Rights automatically terminated. Thus, Defendants claim that DEPCO, Route 2, and Car War never actually owned the Declarant Rights. This Court disagrees.
A close reading of Commissioner's Comment 3 reveals that it does not speak to the same type of transfer as that which occurred between Car War and its predecessors in interest. The Receiver's Deed, the DEPCO Deed, and the Route 2 Deed all transferred only one thing — the Declarant Rights. This is the only interest in the Condominium that Marquette ever possessed and thereby the only interest that could be transferred by the Receiver. Commissioner's Comment 3, on the other hand, addresses a situation whereby a declarant transfers "all of his interest in a condominium project to a successor, without a concomitant
transfer of the special rights of a declarant." Id. (Emphasis added). This contemplates the transfer of some portion of a declarant's interest in a condominium (i.e. unsold units) without a simultaneous transfer of the special declarant rights. Seee.g., Greensleeve's, Inc. v. Lee's Wharf Marina Association,711 A.2d 1140 (R.I. 1998) (holding that declarant rights were not automatically transferred along with six unsold condominium units and a parking lot because an instrument was not recorded that complied with § 34-36.1-3.04(a)). As stated above, the only interest that was transferred by the Receiver's Deed, the DEPCO Deed, and the Route 2 Deed was the actual Declarant Rights. Therefore, Commissioner's Comment 3 is inapplicable to the current action and hence, Defendants' dependence on it is mislaid.
Defendants also rely on America Condominium, Inc. v. IDC,Inc. to support their contention that the Association is now the rightful owner of the Declarant Rights. America Condominium,Inc. v. IDC, Inc. involved a developer, who by an illegal voting scheme, had attempted to extend his seven-year development rights in a condominium located in Newport, Rhode Island. Our Supreme Court found the developer's attempted extension to be unlawful and that therefore, the development rights had expired by their natural terms, at the end of the seven-year period. Our Supreme Court stated that "we conclude that when the associated development rights expired, so also did all of the declarant's rights in the master units. Accordingly . . . title to the disputed property vested in the individual unit owners in fee simple." America Condominium, Inc. v. IDC, Inc.,844 A.2d at 133. Defendants, in their memorandum, rely on this statement to support their argument that the Declarant Rights, as a result of the conveyancing defect, terminated and title vested in the Association. The situation in America Condominium, Inc. v. IDC,Inc. is wholly dissimilar from the one at issue. In the former, the declarant rights had expired by their natural term, and therefore, they reverted back to the unit owners. Here, the Original Declarants reserved the Declarant Rights for a period of fifty years, and as a result, these rights will not expire until June 30, 2040. Therefore, there is no prospect of the rights reverting to the Association until such date, and accordingly Defendants' reliance on America Condominium, Inc. v. IDC, Inc.
is unavailing. Even assuming arguendo that the Receiver's Deed, the DEPCO Deed, and the Route 2 Deed did not properly effectuate any transfers, the Declarant Rights would theoretically still be in the Marquette receivership estate, not in the hands of Defendants. This Court does not, however, believe that the situation before it compels such an inequitable result.
The Condominium Act specifically identifies the principle of "mistake" as a supplementary rule of equity, which may be applied. Sec. 34-36.1-1.08. The situation before this Court arose because of the mutual mistake of those parties executing the Receiver's Deed, the DEPCO Deed, and the Route 2 Deed. Parties to these transactions intended to transfer the Declarant Rights and notably, Defendants do not attempt to argue otherwise. Thus, the equitable remedy of reformation is available to conform the deeds to reflect the intentions of those parties. This Court does not believe that the application of reformation would, in this case, be inconsistent with any provisions of the Condominium Act. This Court does not find any language in § 34-36.1-3.04(a) that requires that the document, evidencing the transfer, be contemporaneously executed by the transferee. Indeed, it is common in commercial practice for documents to be drawn up by persons in one place and then signed by persons in a different place at an entirely different time. Although, a two year expanse between Car War's execution of the deed and the inclusion of their signature is hardly exemplary, it is not an incurable error or a total forfeiture of the Declarant Rights.
Under Rhode Island law, it is well settled that the equitable remedy of reformation is available to cure mutual mistake. Mutual mistake is defined as "one common to both parties wherein each labors under a misconception respecting the same terms of the written agreement sought to be [reformed]." Yates v. Hill,761 A.2d 677, 680 (R.I. 2000) (quoting Dubreuil v. AllstateInsurance Co., 511 A.2d 300, 302 (R.I. 1986)). In order for reformation to be appropriate, "it must appear that by reason of a mistake, common to the parties, their agreement fails in some material respect correctly to reflect their prior completed understanding." Nunes v. Meadowbrook Development Co.,824 A.2d 421, 425 (R.I. 2003) (quoting Dubreuil v. Allstate InsuranceCo., 511 A.2d at 302). Our Supreme Court "has ruled that when a party seeks `the reformation of a deed on the ground of mutual mistake, it [is] necessary to establish such mistake by clear and convincing evidence before a reformation of such an instrument should be granted.'" Nunes v. Meadowbrook Development Co.,824 A.2d at 425 (quoting Vanderford v. Kettelle, 75 R.I. 130, 139,64 A.2d 483, 487 (1949)).
This Court is satisfied that mutual mistake has been proven by clear and convincing evidence. The transferees of the Receiver's Deed, the DEPCO Deed, and the Route 2 Deed have all clearly demonstrated that they intended to accept the transfer of the Declarant Rights and that the omission of the transferee's signature was the result of their mistaken belief that only the transferor's signature was necessary. This fact is most clearly evidenced by the willingness of the transferees to execute the corrective instruments, evidencing the transfer of the Declarant Rights. As stated above, corrective instruments have been executed by a representative of the State of Rhode Island, a representative of Route 2, and a representative of Car War. Notably, "one would be hard pressed to imagine more compelling extrinsic evidence of the parties' intent than the unanimous assent of opposing negotiators." Rosen v. E. Rosen Company,818 A.2d 695, 698 (R.I. 2003) (quoting Bloom v. HearstEntertainment, Inc., 33 F.3d 518, 524 (5th Cir. 1994)). Further, reformation is appropriate as there has been no harm or prejudice to the Defendants or any other third parties. Defendants, as made clear above, have never had an expectancy interest in the Declarant Rights and therefore are seeking a windfall from this Court. Our Supreme Court has stated that any attempt by a third party "`to take gratuitous advantage of an agreement in which [it] took no part,' [is] an effort we disdain." Rosen v. E.Rosen Company, 818 A.2d at 697 (quoting Marr Scaffolding Co. v.Fairground Forms, Inc., 682 A.2d 455, 459 (R.I. 1996)).
Moreover, Defendants, along with any other interested third parties, were on constructive notice of the attempted transfer of the Declarant Rights. The Receiver's Deed, the DEPCO Deed, and the Route 2 Deed all included the name of the transferor, the transferee, the transferor's signature, and a description of the interest transferred. Indeed, our Supreme Court has held that an instrument, not properly acknowledged by all parties, can still provide constructive notice. See In re Barnacle,623 A.2d 445, 449 (R.I. 1993) (holding that a mortgage not properly signed by a joint mortgagor imparted constructive notice of an interest in the property.) Further, Defendants undeniably had actual notice of Car War's purchase of the Declarant Rights, as evidenced by a resale certificate that Defendants issued to Car War, at the latter's request, prior to their closing. Indeed, all parties involved in this current action and the prior transferees have conducted themselves as if the disputed transactions resulted in a bona fide transfer of the Declarant Rights. Markedly, in a letter from Cambio to Plaintiffs, dated June 17, 2004, Cambio acknowledged Plaintiffs as the owners of Units 7, 8, and 9. Furthermore, Defendants were not even aware of the technical conveyancing error until the issue was raised by Plaintiffs. Reformation, in this instance, is warranted.
In addition, this Court finds that the creation of Units 7, 8, and 9 was a valid exercise of Car War's Declarant Rights, as the ordered reformation relates back to the dates on which the original deeds were executed. "The reformation of an instrument relates back to the time the instrument was originally executed and simply corrects the document's language to read as the instrument should have read all along. A reformed instrument takes effect from the time of its original execution." 66 Am.Jur. 2d Reformation of Instruments § 9 (2006); see alsoGeneral Builders Supply Co. v. Arlington Co-operative Bank, 271 N.E.2d 342 (Mass. 1971); Dumais v. Gagnon, 433 A.2d 730 (Me. 1981). This Court believes that, to reach an equitable result, it is necessary for the reformation of an instrument to relate back to the original date of execution. The current action provides no exception. See generally Hopkins v. The Equitable LifeAssurance Society of the United States, 107 R.I. 679,270 A.2d 915 (1970) (reforming a life insurance policy so that the proper beneficiary designation was in place at the date of decedent's death); see also Hunt v. Century Indemnity Company,58 R.I. 336, 192 A. 799 (1937) (reforming a liability insurance policy so that the injured party was covered as of the date of the car accident).
Based on the above, it is clear to this Court that the equitable remedy of reformation is proper to vest Plaintiff Car War with title to the Declarant Rights. Plaintiffs have proven by clear and convincing evidence that they, and their predecessors in interest, intended to transfer the Declarant Rights and the omission of the transferee's signature was the result of mutual mistake. Our Supreme Court has stated, in deciding on the validity of a mortgage, that "[t]o suggest that such an interest is a nullity because of the missing signature is to exalt form over substance." In re Barnacle, 623 A.2d at 449. Similarly, this Court declines to void Car War's interest in the Declarant Rights. Car War paid valuable consideration for the Declarant Rights and to divest them of these rights would result in a gross forfeiture. It is well-settled that "equity abhors and will relieve against forfeitures." Pleasant Management v. Carrasco,870 A.2d 443, 447 n. 6 (R.I. 2005) (quoting Albertson v. Leca,447 A.2d 383, 387 (R.I. 1982)). In this instance, reformation of the Receiver's Deed, the DEPCO Deed, and the Route 2 Deed is a proper remedy. Defendants have not been, nor will they now be, unfairly harmed by this Court's recognition of the corrective instruments.
 Conclusion
For the reasons stated in this opinion, this Court finds that the transferee's signatures, as required by § 34-36.1-3.04(a), were effectively supplied by the subsequent corrective instruments. Plaintiffs therefore hold valid title to the Declarant Rights and Units 7, 8, and 9. This Court takes notice of the corrective instruments and holds that they properly reform the Receiver's Deed, the DEPCO Deed, and the Route 2 Deed, relating back to their original dates of execution. Counsel shall submit an appropriate order for entry in accordance with this Court's decision.
[1] Sec. 8-2-13 provides: "The superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character."
[2] Sec. 34-36.1-1.08 provides: "The principles of law and equity, including the law of . . . duress, coercion, mistake,
receivership, substantial performance, or other validating or invalidating cause supplement the provisions of this chapter, except to the extent inconsistent with this chapter." (Emphasis added).
[3] Sec. 34-36.1-1.12 provides: "The remedies provided by this chapter shall be liberally administered . . . [a]ny right or obligation declared by this chapter is enforceable by judicial proceeding."
[4] "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." R.I. Super. R. Civ. P. 56(c).
[5] The Amended Declaration was later amended by the First, Second, and Third Amendments. The parties do not dispute the validity of these amendments. However, the validity of the Fourth and Fifth Amendments, which were executed by Plaintiffs in 2005 and 2006, is contested by the Defendants. This issue will be discussed more fully infra.