**MERRIMACK MUTUAL FIRE INSURANCE COMPANY**

v.

**Ronald H. DUFAULT et al.**

No. 2007–196–Appeal.

Supreme Court of Rhode Island.

Oct. 17, 2008.

Kathryn Hopkins, Cranston, for Plaintiff.

Wayne Resmini, Providence, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on September 29, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and we shall

decide this appeal without further briefing and argument. We vacate the judgment of the Superior Court.

### Facts and Travel

This case arose as a result of an insurance coverage dispute between the defendant, Frank Beauparlant (Beauparlant or defendant), who allegedly was injured in an automobile collision, and the plaintiff, Merrimack Mutual Fire Insurance Company (Merrimack or plaintiff), an insurance company that issued a homeowner's policy to Ronald H. Dufault, Sr. (Ronald Sr.) and his wife, Pauline Dufault (collectively Dufaults). Merrimack's policy, which commenced on May 27, 1990, included a personal umbrella liability policy (policy). The policy provided insurance to the insured for an amount in excess of its required minimum underlying insurance, which for automobile liability was $250,000 each person/$500,000 each occurrence for bodily injury; $100,000 each occurrence for property damage; or a combined single limit of $300,000 for each occurrence. Significantly, the policy extended coverage to relatives of the named insured who lived in the same household and owned a car, motorcycle, motor home, or recreational vehicle. The policy defined "insured" as "you or any relative of yours," and "relative" as "a person who lives in your household and is * * * related to you[.]"

On February 4, 1999, Beauparlant was involved in a motor vehicle accident with the Dufaults' son, Ronald H. Dufault, Jr. (Ronald Jr.).[1] The record discloses that at the time of the collision, Ronald Jr. was driving a 1979 Chevrolet pickup truck that he owned and insured with Travelers Insurance Company, with single-limit-liability coverage of $75,000. It is also undisputed that Ronald Jr. was residing with his parents. Although the policy was in effect at the time of the accident, whether it extended to Ronald Jr. is the subject of this case.

After the collision, Beauparlant filed suit against Ronald Jr., Travelers Property Casualty, and Quincy Mutual Fire Insurance Company. The plaintiff subsequently instituted this action against Beauparlant, the Dufaults, and Ronald Jr., seeking a declaratory judgment reforming the policy to exclude coverage for Ronald Jr. for the applicable policy period, or in the alternative, rescinding the policy as to him.

The case was assigned to the nonjury trial calendar. The parties submitted to the trial justice an agreed statement of facts and memoranda.[2] According to the agreed statement of facts, Merrimack biannually sent renewal questionnaires to the Dufaults, who were asked to list the members of their household and the operators of any vehicles. In the renewal questionnaire in effect at the time of the alleged injury to defendant, neither Ronald Jr. nor his vehicle was listed; instead, only the Dufaults and their two vehicles were included in the response. The parties also agreed that Ronald Jr. was not included because Ronald Sr. "intended that the personal umbrella liability [policy] only appl[y] to his own vehicles." Furthermore, the parties agreed that, if Merrimack knew that Ronald Jr. was a member of the household and owned a motor vehicle that fell short of the minimum coverage required by the policy and that Ronald Sr. did not intend to provide his son with umbrella insurance, the carrier would have

---

1. For the sake of simplicity, we will refer to the father and son by their first names followed by their surname suffix. We intend no disrespect.

2. Despite being joined as defendants, the Dufaults and Ronald Jr. opted to forgo participating in the present dispute on the basis that they "neither support nor disagree with either position of either of the other parties."

issued a restricted endorsement that would have excluded Ronald Jr. It is noteworthy, however, that the renewal questionnaire was not part of the original insurance contract, nor was it incorporated into the policy by reference.

Additionally, although it was not included in the stipulated facts, the trial justice addressed Beauparlant's argument that in the renewal questionnaire for the period of May 27, 1992 through May 27, 1993, Ronald Jr. was listed as a driver who was living in the household. The trial justice reasoned that, because Ronald Jr. was not listed in the three intervening questionnaires supplied between 1993 and the time of the injury, Beauparlant's argument that Merrimack knew or should have known that Ronald Jr. was a relative residing in the household was misplaced.

The trial justice issued a written decision in which she found a mutual mistake between the parties concerning whether the policy's coverage extended to Ronald Jr.[3] She granted Merrimack's request to reform the policy, effective May 1, 1998. A judgment directing plaintiff to issue a restricted endorsement excluding Ronald Jr. from the policy, retroactive to the time of the accident, subsequently was entered. The defendant filed a notice of appeal to this Court.[4]

## Standard of Review

■■■■ This Court reviews with deference a Superior Court decision granting or denying declaratory relief. *Providence Lodge No. 3, Fraternal Order of Police v. Providence External Review Authority*, 951 A.2d 497, 502 (R.I.2008) (citing *Fleet National Bank v. 175 Post Road, LLC*, 851 A.2d 267, 273 (R.I.2004)). In a declaratory judgment action, the trial justice, sitting without a jury, makes findings of fact that are entitled to great weight on appeal and "will not be disturbed absent a showing that [he or she] overlooked or misconceived material evidence or was otherwise clearly wrong." *Id.* (quoting *Casco Indemnity Co. v. O'Connor*, 755 A.2d 779, 782 (R.I.2000)). This Court affords the same deference to the "resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence * * *." *Id.* (quoting *Wickes Asset Management, Inc. v. Dupuis*, 679 A.2d 314, 317 (R.I.1996)). Determinations of questions of law, however, are reviewed *de novo*. *Id.* (citing *Casco Indemnity Co.*, 755 A.2d at 782).

## Analysis

Before this Court, defendant asserts that the trial justice erred in finding a

---

3. Merrimack also sought a declaration that the policy did not extend to Ronald Jr. because he failed to maintain the minimum amount of liability coverage set forth in the umbrella policy. The trial justice rejected this argument and found that the policy language did not exclude coverage on that basis; it merely limited Merrimack's exposure to an amount above the required minimum. The trial justice held that Ronald Jr. would be responsible for any damages that fell within "the gap"—the amount between the insured's underlying coverage and the minimum amount required by the umbrella policy. Merrimack did not file a cross-appeal.

4. Beauparlant filed his appeal on August 10, 2006, ten days after the entry of judgment, while a counterclaim previously filed by the Dufaults and Ronald Jr., alleging that plaintiff must indemnify them for the costs of defending against plaintiff's claim, still was pending. The trial justice denied the counterclaim and entered judgment on March 13, 2007. No new notice of appeal was filed. Although the notice of appeal was premature, the later entry of final judgment cured this defect. *See Estate of Dellefratte v. Dellefratte*, 917 A.2d 407, 408 n. 3 (R.I.2007) (mem.) (citing *McAdam v. Grzelczyk*, 911 A.2d 255, 258 n. 4 (R.I.2006), and *Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A.2d 1113, 1114 n. 1 (R.I. 2002)).

mutual mistake of fact, arguing that because Ronald Jr. was insured according to the clear and unambiguous terms of the policy, the trial justice should not have referred to extraneous material—specifically, the renewal questionnaire—in making her decision. Next, Beauparlant argues that even if the trial justice properly considered extrinsic evidence, her finding of a mutual mistake, by clear and convincing evidence, was erroneous. We agree and hold that it was error for the trial justice to look to extraneous material in deciding this case and that she clearly erred in finding a mutual mistake of fact.

The terms of an insurance policy are construed in accordance with the rules of construction applicable to contracts. *Children's Friend & Service v. St. Paul Fire & Marine Insurance Co.*, 893 A.2d 222, 229 (R.I.2006) (citing *Gregelevich v. Progressive Northwestern Insurance Co.*, 882 A.2d 594, 595 (R.I.2005) (mem.)). Furthermore, as with other written agreements, an insurance policy may be equitably reformed. *Hopkins v. Equitable Life Assurance Society of the United States*, 107 R.I. 679, 684, 270 A.2d 915, 918 (1970) (citing *Ferla v. Commercial Casualty Insurance Co.*, 74 R.I. 190, 195, 59 A.2d 714, 716 (1948)). "For a contract to be subject to judicial reformation, the court must first find a mutual mistake." *Gorman v. Gorman*, 883 A.2d 732, 740 (R.I.2005) (citing *Yates v. Hill*, 761 A.2d 677, 680 (R.I.2000)).

This Court has defined mutual mistake as "one that is 'common to both parties wherein each labors under a misconception respecting the *same terms* of the written agreement sought to be [reformed].'" *McEntee v. Davis*, 861 A.2d 459, 463 (R.I.2004) (quoting *Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I.2004) (emphasis added)). When a mutual mistake is manifest in the agreement at the time it is entered into, the agreement "fails in a material respect correctly to reflect the understanding of both parties." *Id.* (quoting *Rivera*, 847 A.2d at 284). A mutual mistake is not merely the existence of a common error, but rather involves a shared misconception relating to the parties' intent. *Id.* (citing *Nunes v. Meadowbrook Development Co.*, 824 A.2d 421, 425 (R.I.2003)). A party seeking reformation of an agreement must prove a mutual mistake of a material term of the agreement by clear and convincing evidence. *Id.* (citing *Rivera*, 847 A.2d at 284).

### Extrinsic Evidence

We first address whether it was proper for the trial justice to consider the renewal questionnaire in issuing her decision to reform the policy. The trial justice found that Merrimack's mistake was clear from the record; that Merrimack "relied on the renewal questionnaire[ ] and in doing so was under the belief that the household to be covered by the [p]olicy consisted of only two parties—the Dufaults—and covered only two vehicles[.]" However, it is crucially important to bear in mind that the express language of the insurance contract neither refers to nor incorporates the renewal questionnaire into its terms; the questionnaire is an extrinsic factor not within the four corners of the policy and may be utilized only in accordance with our settled rules of contract interpretation. We also note that there is nothing in the record that suggests that the questionnaire is a subsequent modification of the express terms of the umbrella policy. *See Lisi v. Marra*, 424 A.2d 1052, 1056–57 (R.I.1981) (the parol-evidence rule does not bar the admission of subsequent agreements between the parties that modify their original written contract) (citing *Industrial National Bank v. Peloso*, 121 R.I. 305, 310, 397 A.2d 1312, 1314 (1979)). Accordingly, before the trial justice may look

to extrinsic evidence an ambiguity must be found in the terms of the contract. *See Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill,* 652 A.2d 440, 443 (R.I. 1994) ("In situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids.") (citing *Greenwald v. Selya & Iannuccillo, Inc.,* 491 A.2d 988, 989 (R.I. 1985)).

 Whether an ambiguity exists in an insurance policy is a question of law that is determined by examining the policy in its entirety. *Rivera,* 847 A.2d at 284. This exercise is confined to the provisions of the agreement, and the terms are assigned their plain and ordinary meaning. *Id.; Amica Mutual Insurance Co. v. Streicker,* 583 A.2d 550, 552 (R.I.1990). "An ambiguity occurs only when the contract term is 'reasonably and clearly susceptible of more than one interpretation.'" *Rivera,* 847 A.2d at 284 (quoting *Rubery v. Downing Corp.,* 760 A.2d 945, 947 (R.I. 2000)). If the policy is clear and unambiguous on its face, judicial construction is at an end and the terms of the contract must be applied as written. *Id.* (citing *W.P. Associates v. Forcier, Inc.,* 637 A.2d 353, 356 (R.I.1994)). Further, even if an ambiguity is found in the insurance contract, the policy must be construed strictly against the insurer. *Amica Mutual Insurance Co.,* 583 A.2d at 552.

After a careful examination of the insurance contract, we are satisfied that the umbrella policy is clear and unambiguous. The language of the policy explicitly extends coverage to "a person who lives in [the named insured's] household and is * * * related to [the named insured]" and is not contingent on the insured's intent or his or her response to a subsequent renewal questionnaire. Because we are unable to discern any ambiguity in the policy, its terms will be accorded their plain and ordinary meaning without reference to any extrinsic material. *Rivera,* 847 A.2d at 284–85 (citing *Clark–Fitzpatrick, Inc./ Franki Foundation Co.,* 652 A.2d at 443). It is undisputed that at the time of the automobile accident in this case, Ronald Jr. lived with his parents, who were the named insureds under the policy. Therefore, based on the clear and unambiguous language in the policy, we conclude that Ronald Jr. was covered by its express provisions.[5]

### Mutual Mistake

 Notwithstanding our conclusion that the contract is clear on its face and that the trial justice erred when she considered the renewal questionnaire, we shall address whether there existed, at the time of its formation, a mutual mistake by the parties sufficient to reform the agreement. We are of the opinion that, at best, any mistake in appreciating the terms of this contract falls under the rubric of unilateral mistake. A party to a contract who labors under a mistake uncommon to the other side will not be afforded relief. *McEntee,* 861 A.2d at 463 (citing *Boccaros-*

---

5. We equally are satisfied that if the policy was ambiguous and reference to the questionnaire was necessary, this exercise would be of no assistance to Merrimack because the questionnaire merely requires the insured to "LIST ALL MEMBERS OF HOUSEHOLD AND ALL OPERATORS OF VEHICLES/WATERCRAFT AS REQUIRED BY COMPANY." This language does not provide that anyone who is unlisted will be excluded from its coverage—nor does it allow for an after-the-fact inquiry into the intent of the named insured or the insurer. Thus, we are satisfied that to the extent that an ambiguity may exist, it would be construed against Merrimack as the insurer and drafter of the agreement and in favor of coverage for the insured. *Amica Mutual Insurance Co. v. Streicker,* 583 A.2d 550, 552 (R.I.1990).

*sa v. Watkins,* 112 R.I. 551, 557, 313 A.2d 135, 138 (1973)). Even though the Dufaults purportedly never intended to obtain coverage for Ronald Jr., the record contains no evidence that Merrimack intended, at the time it sold the policy to the Dufaults, to insure some, but not all of the named insured's relatives who were living in the household. *See Hopkins,* 107 R.I. at 685, 270 A.2d at 918 ("To warrant reformation it must appear that by reason of a mistake, common to both parties, their agreement fails in some material respect correctly to reflect their *prior completed understanding.*"). (Emphasis added.). On the contrary, the plain language of the policy extends coverage to relatives of the named insured who reside in the same household. Ronald Jr. squarely falls within that language, and Merrimack may not retreat from the terms of the policy based on what the named insured may have intended when the policy was purchased or renewed.

Before this Court, Merrimack endeavors to invoke a novel theory of "vicarious mistake," arguing that if Merrimack knew that Ronald Sr. did not intend for his son to be covered by the policy, then it would have issued the Dufaults a restricted endorsement that excluded Ronald Jr. from its terms. This assertion evades the basic premise of mutual mistake. Merrimack may not rely on the insured's alleged mistake (or the insured's intent when buying the policy or answering a questionnaire) to modify the agreement in its favor. Rather, the parties to the contract must both be laboring under the same mutual mistake of fact at the time the agreement was made.[6] The evidence of Merrimack's original understanding when it sold the insurance is confined to the actual policy that clearly

extends coverage to the named insured's relatives who reside in the household. This umbrella protection was not conditioned on whether the named insured intended for those relatives to be protected. This is not a case in which the insurance policy was of a type that plaintiff did not intend to sell or that the Dufaults did not intend to buy. *See Sherwood v. Walker,* 66 Mich. 568, 33 N.W. 919, 923 (1887) (finding that a party may rescind the agreement if the parties agreed to the sale of a barren cow for beef when in fact the cow was capable of breeding). *See also id.* ("If there is a difference or misapprehension as to the substance of the thing bargained for; if the thing actually delivered or received is different in substance from the thing bargained for, and intended to be sold,—then there is no contract; but if it be only a difference in some quality or accident, even though the mistake may have been the actuating motive to the purchaser or seller, or both of them, yet the contract remains binding.").

## Conclusion

Accordingly, we are of the opinion that the plaintiff did not meet its burden of proving by clear and convincing evidence the existence of a mutual mistake sufficient to warrant reformation of the insurance policy and that the trial justice's finding of mutual mistake clearly was wrong.

For all the aforementioned reasons, the judgment of the Superior Court is vacated. The papers in this case may be remanded to the Superior Court.

---

6. The trial justice incorrectly analyzed mutual mistake based on the time the renewal questionnaire was answered. As we have articulated in this opinion, the questionnaire was not relevant or admissible evidence.